# Richmond

## CLAUDE S. ALLEN v. COMMONWEALTH.
## FLOYD ALLEN v. COMMONWEALTH.

### January 16, 1913.

1.  APPEAL AND ERROR—*Criminal Law—New Trial—Evidence Discovered After Final Judgment.*—This court has no jurisdiction to grant leave to a circuit court to hear and determine a motion for a new trial of a criminal case on the ground of newly discovered evidence, after the end of the term at which final judgment was rendered. There is no precedent in this State for such a procedure. Prior to the adjournment of the term at which final judgment is entered, the trial court has full power to grant new trials on the ground of after-discovered evidence, but after that time it has no such power, and this court cannot confer it.

2.  CRIMINAL LAW—*New Trial—After Discovered Evidence—Requisites—Case at Bar.*—A motion for a new trial on the ground of after-discovered evidence should not be granted unless it appears that the evidence was discovered after the trial; that it could not, by the exercise of ordinary diligence, have been discovered before the trial; that it was material and such as ought, on another trial, to produce an opposite result on the merits, and that it is not merely cumulative, corroborative, or collateral. In the case at bar the evidence is not of the character required, and the motion was not made till after the adjournment of the term at which final judgment was entered, although four months elapsed between the verdict and judgment.

3.  CRIMINAL LAW—*New Trial—Conduct of Trial—Inequality of Punishment.*—The Commonwealth is not bound to pursue the same line of prosecution in all cases, though the same transaction be under investigation, and where it appears that the prisoner has had a fair and impartial trial, a verdict supported by the evidence and in accordance with the law of the land, will not be set aside simply because others convicted of the same offense have received a lighter punishment, even if the record in the latter cases were before the court and could be looked into.

Petitions for writs of error to judgments of the Circuit Court of Wythe county.

*Refused.*

*Hiram M. Smith, H. M. Smith, Jr., L. O. Wendenburg* and *Richard E. Byrd,* for the petitioners.

KEITH, P., delivered the opinion of the court.

Floyd Allen was found guilty of murder in the first degree in the Circuit Court of Wythe county, and sentence of death was passed upon him by that court on the 10th of September, 1912. At the November term of this court he presented a petition for a writ of error, in which he alleged that the trial court had made rulings prejudicial to him in the admission and exclusion of evidence, in instructions given to the jury, and in the judgment pronounced. Each assignment of error presented in that petition was fully considered by the court, and by an order entered on the 18th day of November, 1912, it appearing that there was no error to the prejudice of the petitioner, the prayer of his petition was refused.

At a former day of this term a petition was presented by his counsel, in which it is alleged that "certain newly discovered evidence, and evidence in the nature of newly discovered evidence, has come to the knowledge of your petitioner, evidence which, because of the condition of your petitioner, who has been in close confinement ever since his arrest, and for other reasons, he could not have discovered by any diligence in time for use at his trial in Wythe county"; and the prayer of the petition is that the court "recall its order refusing your petitioner a writ of error for the purpose of amending the same so far as to permit the said circuit court to hear a motion for a new trial upon the grounds set forth, and to grant or refuse the same as its sound discretion may prompt."

The contention of the petitioner is that in proper cases this court has jurisdiction to grant leave to the circuit court to hear and determine a motion for a new trial on the ground of newly discovered evidence after the end of the term at which the judgment was rendered.

Among the cases relied upon is that of *Bledsoe* v. *Nixon,* 69 N. C. 81, the syllabus of which states that "When an appeal is taken from the superior to the supreme court, a proceeding to obtain a new trial on account of newly discovered testimony cannot be instituted in the superior court, but must be brought in the supreme court, and upon a proper case that court will remand the cause so that the superior court may take jurisdiction and proceed to do what may be right."

That practice does not obtain in this court, our practice being yet more liberal, a motion for a new trial for after-discovered evidence being a matter of right in the trial court, and not dependent upon leave granted by the appellate court, but under limitations and conditions which will hereafter be discussed.

The case of *American Soda Fountain Co.* v. *Sample,* 136 Fed. 857, 70 C. C. A. 514, was a suit for the infringement of a patent, in which the circuit court of appeals had held that certain claims of the patentee were invalid for want of patentable novelty, and had reversed the circuit court, and the mandate of the appellate court had gone down directing the circuit court to enter a decree in conformity with its opinion. Upon an amended petition in the circuit court a rehearing was granted, upon condition that the petitioner pay all costs that had accrued both in the circuit court and in the court of appeals; and upon appeal from that order the circuit court of appeals held that the trial court had exceeded its authority, quoting from numerous decisions of the supreme court, among others *In re Potts,* 166 U. S. 263, 17 Sup. Ct. 520, 41 L. Ed. 994, where Mr.

Justice Gray said that "When the merits of a case have been once decided by this court on appeal, the circuit court has no authority, without express leave of this court, to grant a new trial, a rehearing, or a review, or to permit new defenses on the merits to be introduced by amendment of the answer."

We cannot think that this case has any possible bearing upon the question before us. It illustrates a feature in the practice of the United States courts which finds no parallel in the procedure in this State.

The case of *United States* v. *Knight's Admr.,* 1 Black 488, 17 L. Ed. 80, has no possible bearing upon this case. In it the court held that after a cause had been argued and decided, the supreme court will not hear a motion to change the decree based on affidavits taken to show facts which do not appear in the record; that it will not suffer its judgment upon an appeal to be influenced in any respect by new testimony, even in a case which is within its general chancery powers, much less where it is exercising merely the special jurisdiction conferred by Congress in respcet to California land claims; and, finally, that the court does not doubt its power to open a judgment rendered at the present term and continue or rehear the cause, if, upon the record, one of the judges who concurred in the decision supposes it to be erroneous.

*Southard* v. *Russell,* 16 How. 547, 14 L. Ed. 1052, was a chancery case, and it was held that a bill of review cannot be maintained where the newly discovered evidence upon which the bill purports to be founded goes to impeach the character of witnesses examined in the original suit; nor can it be maintained where the newly discovered evidence is merely cumulative, and relates to a collateral fact in the issue, not of itself, if admitted, by any means decisive or controlling, such as the question of adequacy of price, when the main question was whether a deed was

a deed of sale or a mortgage; that where a case is decided by an appellate court and a mandate is sent down to the court below to carry out the decree, a bill of review will not lie in the court below to correct errors of law alleged on the face of the decree; resort must be had to the appellate court.

With reference to chancery proceedings our practice is more liberal than that disclosed by the cases in the United States courts relied upon by plaintiff in error.

In *Campbell's Ex'ors* v. *Campbell's Ex'ors,* 22 Gratt. (63 Va.) 649, this court held that all decrees of the Court of Appeals are in their nature final, except possibly where that court disposes only of a part of the case at one term, and reserves it for further and final action at another; that when the court of appeals makes a decree and sends the cause back for further proceedings, there cannot be a bill of review to correct the decree of the Court of Appeals for errors apparent on the face of the record. But there may be such a bill to correct the decree on the ground of after-discovered evidence; but to sustain a bill of review in such a case the greatest caution should be observed, and the new matters to be sufficient ground for the reversal of the decree ought to be very material and newly discovered, and unknown to the party seeking relief at the time the decree was rendered, and such as could not have been discovered by the use of reasonable diligence.

This is the unquestioned law of this State, from which it appears that in chancery proceedings a bill of review for after-discovered evidence may be filed, although the whole matter had been finally adjudicated in the court below and its decree confirmed in the Court of Appeals, with a salutary caution, however, with respect to the character of evidence upon which a bill under such circumstances should be entertained.

In *State* v. *Way,* 43 S. C. 410, 21 S. E. 313, it appears

that after conviction of murder and sentence of death affirmed on appeal, the circuit judge decided that he had no power to consider a motion for a new trial on the ground of after-discovered evidence, and, pending an appeal from this determination, a motion was made and granted suspending this latter appeal, with leave to defendant to renew his motion for new trial in the circuit court; and it was held that the circuit court, after such leave granted, had jurisdiction to consider the motion for new trial, hear the testimony offered and decide the question. But that case rests upon a practice which obtains in South Carolina and which has no place in our system of jurisprudence.

In *State* v. *David,* 14 S. C. 428, "one convicted of murder moved at the same term for a new trial upon the ground of insufficiency of evidence, which motion was overruled, and sentence was passed. At a subsequent term, but before execution of the sentence, this defendant moved for a new trial upon affidavits of after-discovered evidence, which motion was refused upon the ground that there was no power to grant it. *Held,* that the circuit court did possess this power, but that it should be exercised with great caution." In the course of the opinion the court said: "There can be no doubt that motions of this sort should be received with the utmost caution, because, as it is said by a learned judge, there are but few cases tried in which something new may not be hunted up, and also because it tends to perjury; and, as was said in the case of *State* v. *Harding,* 2 Bay (S. C.) 268, it would have a mischievous tendency after all the evidence on the part of the State had been fully disclosed to allow one with his life in danger an opportunity, by the assistance of confederates, to procure unprincipled witnesses to contradict the evidence on the part of the State, and thereby defeat the ends of justice.

In the Supreme Court of the United States, in the case

of *Sawyer* v. *United States*, 202 U. S. 150, 26 Sup. Ct. 575, 6 Ann. Cas. 269, it appears that the prisoner was tried in the Circuit Court of the United States for the Eastern District of North Carolina, found guilty of murder, and the case was taken upon writ of error to the supreme court, where the judgment was affirmed at the Otcober term, 1905. After the mandate of the supreme court went down, Henry Scott, who was the principal witness for the prosecution, was convicted and prior to his execution confessed that he had committed the crime of which Sawyer had been convicted, and that he alone was guilty. Upon petition setting out these facts to the Supreme Court of the United States, and praying the court to recall its mandate and amend the same so as to permit the circuit court to hear the motion for a new trial upon the grounds set forth and to grant or refuse the same as its sound discretion may prompt, the supreme court granted the motion. No opinion is filed, no reason given, no authority cited; but we, of course, do not presume to question, indeed we do not at all doubt, that the judgment of the supreme court was in strict accordance with the law of the case.

But we are not here to pass upon the procedure in other jurisdictions. The case before us must be determined by the laws of this State, and by the long and unbroken course of procedure in the courts of this Commonwealth. It is admitted in the petition that there is no case to be found in the records of the courts of this Commonwealth in which any such procedure has been recognized or acted upon. We will go further: We have not only been unable to find any case, but we can find no expression of opinion in any case or any text-writer, or in any of the sources to which we are accustomed to look to ascertain the law, in which there is a suggestion or a hint of the existence of any such practice.

In *Halley's Admr.* v. *Baird*, 1 Hen. & Munf. (11 Va.)

25, it was held that a district court has no power or juris-
diction to reverse, alter or amend a judgment given at a
former term of the said court, which had been entered on
the order book and signed by a judge in open court.

In *Barbour Co.* v. *O'Neal*, 42 W. Va. 295, 26 S. E. 182,
it was held that after the end of the term the court has no
power to modify or annul any final judgment or decree,
except in certain causes, by writ of error *coram nobis* or
motion under chapter 134 of the Code.

In *Winston* v. *Giles*, 27 Gratt. (38 Va.) 530, it was held
that "In an action at law, which is submitted to the judg-
ment of the court without a jury, the court renders a judg-
ment, to which one party excepts, and it being near the end
of the term the court gives the counsel time, until the first
day of the next term, to prepare the bill of exception, but
judgment is entered. The court cannot give such leave,
and the bill of exception cannot be made a part of the
record. Even if the court had authority to give the time
until a day certain in the next term to prepare the bill of
exception, if the bill of exception is not tendered to the
court on that day, it cannot afterwards be received. In
cases when it may be important to give time until the next
term to prepare the bill of exception, the case should be
kept open, and the judgment should not be entered until
the next term."

In *Baker* v. *Swineford*, 97 Va. 112, 33 S. E. 542, the
court held that "at common law no judgment became final
until the end of the term at which it was rendered, regard-
less of the duration of the term and until final no court
could direct an execution to issue on it. Section 3600 of
the Code, however, confers on courts authority to direct
executions to issue on judgments under the conditions
therein set forth, but such judgments do not thereby be-
come final so as to deprive the court, during the term, of
the power to correct, or, if need be, annul them if errone-

ous." And in the course of the opinion the court said: "It is true that at common law executions issued only upon final judgments. It is also true at common law that 'during the term wherein any judicial act is done the record remains in the breast of the judges of the court and in their remembrance, and therefore the roll is alterable during that term as the judges shall direct; but when that term is past, then the record is in the roll, and admits of no alteration, averment or proof to the contrary." Citing 3 Tho. Co. Lit. 323.

In *Virginia Devel. Co.* v. *Rich Patch Iron Co.,* 98 Va. 700, 37 S. E. 280, it was held that "after final judgment at law and the adjournment of the term, the judge of the court has no power to sign bills of exception to rulings made during the trial, although it be done by agreement of counsel, and by leave of the court entered of record during the term. Such bills are no part of the record, and the fact that they were signed in vacation appearing in the record here, this court will take notice of it *ex mero motu.* In order to give to a court, at a subsequent term, authority to sign a bill of exception in a case tried at a previous term, some control must be reserved over the case by the court during the term of trial, as by failure to enter judgment, or entering a motion for a new trial and continuing it until the next term, or by leave reserved to sign a bill of exception on or before a particular day of the next term, and the presentation of the bill for signature in accordance with the terms of the leave reserved."

In consequence of the case just cited the legislature passed an act permitting the judge of the court to sign a bill of exceptions within thirty days of the end of the term, and by consent of parties entered of record sixty days were allowed within which exceptions might be filed.

In the case of *Wright* v. *Commonwealth,* 111 Va. 873, 69 S. E. 956, the plaintiff in error had been found guilty

of murder in the first degree and sentenced to death. He applied for and obtained a writ of error from this court, but it appeared that the bills of exception were signed more than thirty days after the end of the term at which the exceptions were taken, and that consent to extend the period within which the exceptions were to be signed did not appear of record. This court held that an order made during the term that "the prisoner is allowed sixty days from the adjournment of this court within which to file his bill of exceptions," but which fails to show that the sixty days was agreed upon and entered of record by consent of parties, is wholly ineffectual to extend the time beyond the thirty days fixed by the statute. Nor has the trial court any power, after the adjournment of the term at which a final order is entered, to amend its final order so as to show that the sixty days was in fact agreed upon and to be entered of record by consent of parties. "During the term of the court at which a judicial act is done, the record remains in the breast of the court, and may be altered or amended; but, after the adjournment of the term, amendments can only be made in cases in which there is something in the record by which they can be safely made. Amendments cannot be made, after the adjournment of the term, upon the individual recollection of the judge, or upon evidence *aliunde.*" There being no bills of exception before the court which it could rightfully consider, the judgment was affirmed. In the course of the opinion the court said: "Although we are without authority to consider the assignments of error based upon bills of exception which are not made part of the record, we deem it proper to say that this is a companion case with the cases of *Ed. Jones* v. *Commonwealth and Richard Perkins* v. *Commonwealth,* 111 Va. 862, 69 S. E. 953, both of which have been heard and decided at this term of court; that all three of the cases arose out of the same transaction, are depend-

ent substantially upon the same evidence, and that the assignments of error dealt with in the cases of Jones and Perkins are common to all three cases; that in those cases the judgment of conviction in each is set aside upon the ground that they were not fairly submitted to the jury, and upon the further ground that the prisoner in each was entitled to a change of venue; and that the circuit court erred in overruling the motion of each for such change of venue. We deeply regret that the case of the plaintiff in error has not been so presented as to enable this court to give him the same measure of relief that we have found it proper to afford his alleged companions in guilt. We make this statement for the benefit of the plaintiff in error, in the event he be advised to apply for executive interference in his behalf."

It is not improper, we believe, to state that the executive did interfere and postponed the execution until the cases of Jones and Perkins could be heard and determined in the court to which they were removed. Those trials resulted in an acquittal of the defendants, and Wright was subsequently pardoned by the Governor. See also *Barnes* v. *Commonwealth,* 92 Va. 794, 23 S. E. 784.

The statute law in numerous instances provides for the amendment of judgments in the trial court after the term at which they were rendered has ended. Sections 3447 and 3451 of the Code are examples in point. But the exercise of the power is carefully circumscribed as to its extent and limited as to the time within which such relief may be had.

It therefore sufficiently appears not only that there is no precedent in the records of this Commonwealth for granting the prayer of the petition, but that the books are filled with cases repugnant to and contradictory of the existence of any such practice as that upon which the petition relies. So that for this court to grant the prayer

would be to usurp powers which it has never hitherto exercised.

But had the court reached a different conclusion upon the primary question of power, there is nothing in the case presented to us which would justify its exercise. It will hardly be contended that even in those jurisdictions where the power is conceded to exist it would be resorted to except under conditions that would justify a new trial for after-discovered evidence in cases in which the term had not ended at which the judgment complained of had been rendered.

Floyd Allen was indicted at the April term, 1912, of the Circuit Court of Carroll county along with Claude S. Allen, Friel Allen, Sidna Allen, Wesley Edwards, Victor Allen and Byrd Marion, for a murder alleged to have been committed on the 14th day of March, 1912. Upon their arraignment they elected to be tried separately, and after the preliminaries necessary to the trial had been completed, the hearing of evidence in the case of Floyd Allen began on the 2nd day of May, and was completed on the 17th day of May, 1912, resulting in a verdict of guilty of murder in the first degree. Claude S. Allen was subsequently put upon trial with a like result. Judgments were not entered upon the verdicts until September 10, 1912, in order that Floyd Allen and Claude Allen might be witnesses in behalf of the defense in the prosecutions still pending growing out of the same transaction. The homicides took place in the court room, in the light of day and in the presence of a large number of witnesses. In the successive trials that took place these witnesses were subjected to examination, cross-examination, and re-examination. Their knowledge of the facts was probed in every conceivable way. There was every opportunity that can exist in any case for a full, complete and exhaustive presentation of all the facts bearing upon the issues, and no

one can read the record of the court below, and the original petitions upon which this court acted at the November term, without being satisfied that the prisoners were defended by capable, faithful, earnest and energetic counsel, who left no stone unturned to present the cause of their clients to the best advantage. Every means known to the law was resorted to to break down and to impair the credibility and the force of the witnesses who testified for the prosecution; but notwithstanding every effort on the part of the defense, so conclusive was the testimony for the prosecution that the juries in the cases of Floyd Allen and of Claude Allen found verdicts of murder in the first degree.

Upon a consideration of the evidence presented upon this motion it plainly appears that in some instances it was discovered before the judgment was rendered; in others that its tendency is to impeach the credibility of witnesses and is addressed to questions which were the subject of investigation at the trial, upon which testimony of witnesses was adduced of a character identical with that now brought forward upon this motion, and comes, therefore, strictly within the rule as to cumulative evidence, and in some instances bears upon facts wholly collateral to the issue under investigation; and taken as a whole the new evidence presented is not, in our judgment, such as ought to produce a different result if a new trial were awarded.

The subject of granting new trials on the ground of after-discovered evidence has been discussed in numerous cases decided by this court.

In *St. John's Executors* v. *Alderson,* 32 Gratt. (73 Va.) 140, Judge Christian delivering the unanimous opinion of the court, it was held that the testimony must have been discovered since the former trial; that it must appear that the new testimony could not have been obtained with

reasonable diligence on the former trial; that it is material to the issue; that it must go to the merits of the case, and not to impeach the character of a former witness; and that it must not be merely cumulative.

In the *City of Norfolk* v. *Johnakin,* 94 Va. 285, 26 S. E. 830, it was held that "a motion for a new trial on the ground of after-discovered evidence should not be granted unless it appears that the evidence was discovered after the trial; that it could not, by the exercise of reasonable diligence, have been discovered before the trial; that it was material, and such as ought on another trial to produce an opposite result on the merits; and that it is not merely cumulative, corroborative, or collateral." See *Jones* v. *Martinsville,* 111 Va. 103, 63 S. E. 265.

The same rules were held to apply in criminal cases, *Nicholas* v. *Commonwealth,* 91 Va. 753, 21 S. E. 364, and the authorities there cited. Authorities upon this point might be multiplied to an almost indefinite extent, but we have cited enough to show what we believe to be the unquestioned law of this Commonwealth.

It is urged upon us that even-handed justice demands that Floyd Allen and Claude Allen should be awarded a new trial, because upon the trial of others equally as guilty as they the charge of conspiracy was abandoned and verdicts rendered for murder in the second degree. The guilt or innocence of the petitioners must be determined by the record before us; the records upon the other trials are not here, and we are unable to say what they do or do not contain; but if it be granted that the statement of counsel for the petitioners is accurate in the respect mentioned, it could not produce the result contended for. The Commonwealth was not bound down to pursue the same line of prosecution in all the cases, though the same transaction was under investigation. With respect to the verdicts of the juries being more lenient in subsequent cases, that is

a matter beyond the control of the courts. The question before us is, were the accused guilty of the offense with which they were charged; were they tried in accordance with the law of the land, and does the evidence support the verdict of the jury? It does not concern us that in other cases other juries inflicted a milder punishment upon substantially the same state of facts. *Burton & Conquest* v. *Commonwealth,* 108 Va. 892, 63 S. E. 376.

It is said that unless some such power as is here sought to be exercised exists injustice may be done, and innocent men may suffer punishment. All human tribunals are liable to err, and if laws were not enforced until all possibility of error was excluded, government would come to a standstill. All that the courts can do is to enforce the law as it exists, and to give to all who come within the range of their jurisdiction the full and equal benefits of all the safeguards that have been established for the protection of those accused of crime.

The circumstances attending the cases before us are such as to leave no doubt upon our minds that the accused have had a fair trial, with every possible opportunity fully to present their case before an impartial jury, and that the judgments rendered against them are supported by the evidence, and are in accordance with the law of the land.

We are, therefore, of opinion that the prayer of the petitions should be denied.

*Writs of Error Refused.*