## Richmond.

### BOXLEY THANIEL V. COMMONWEALTH.

March 16, 1922.

Absent, West, J.

1. HOMICIDE—*Degrees of Homicide—Murder in the Second Degree or Manslaughter—Evidence Sufficient to Support Verdict of Murder in the Second Degree—Case at Bar.*—Defendant upon the refusal of a girl to dance with him began shooting towards her. Immediately thereafter deceased began firing a pistol into the ceiling. These two persons appeared to have been the only ones who did any shooting. Both moved towards the door of the room, the defendant being just ahead as he reached the doorway whirled around and shot deceased, who fell and died almost instantly. There was nothing to show that defendant had any excuse for shooting deceased. Defendant contended that there was some doubt as to who actually shot deceased, but this doubt was concluded against him by the verdict of the jury.

   *Held:* That the case was one in which the defendant, with a deadly weapon in his previous possession, killed deceased without provocation, and even if he had been convicted of murder in the first degree, the appellate court could not have interfered.

2. HOMICIDE—*Murder in the First Degree—Length of Time of Existence of Intent to Kill.*—In order to constitute murder even in the first degree it is not necessary that the intent to kill should have existed for any particular length of time. It may be formed at the very moment of the killing.

3. WITNESSES—*Statements Made by Accused upon a Legal Examination—Accused a Witness in His own Behalf—Section 4781 of the Code of 1919.*—Where defendant on trial for homicide had testified as a witness at the coroner's inquest, to which he was duly summoned and to which he did not voluntarily offer himself as a witness, not being under arrest at the time or charged with the crime, he cannot be regarded as having testified in the capacity of a witness in his own behalf, under section 4781 of the Code of 1919, notwithstanding that his testimony at the coroner's inquest tended to exculpate him.

4. WITNESSES—*Statements of Accused Made by Him as a Witness upon Legal Examination—Section 4781 of the Code of 1919—Distinction Between Evidence in Chief and Cross-Examination of Accused.*—There is under section 4781 of the Code of 1919, forbidding the introduction against accused of any statement made by him as a witness upon a legal examination, a clear distinction between a case in which the Commonwealth undertakes to prove by evidence in chief statements made by an accused person upon a former legal examination (not as a witness for himself), and a case in which the Commonwealth merely seeks to bring out, or to lay the foundation for bringing out, such statement by cross-examnation of the prisoner himself when he takes the stand in his own behalf. In the former case such statements are inadmissible, whereas the cross-examination is permissible.

5. WITNESSES—*Statements Made by Accused upon a Legal Examination—Accused a Witness in His own Behalf—Sections 4778 and 4781 of the Code of 1919—Case at Bar.*—In the instant case, a prosecution for homicide, accused had been summoned and testified at the coroner's inquest. He was subsequently indicted and at the trial went on the stand and testified fully as a witness in his own behalf. On cross-examination he was asked and required to answer whether he did not while testifying at the coroner's inquest make a contradictory statement.

*Held:* No error.

6. WITNESSES—*Statements Made by Accused upon a Legal Examination—Accused a Witness in His own Behalf—Sections 4778 and 4781 of the Code of 1919.*—Having in mind the history, purpose, and present terms of section 4778 of the Code of 1919, providing that when accused is sworn and examined in his own behalf he shall be deemed to have waived his privilege of not giving evidence against himself, and section 4781 of the Code of 1919, providing that "evidence against the accused" shall not be given of any statement made by him as a witness upon a legal examination; the "evidence against the accused" contemplated by section 4781 necessarily refers to evidence by third parties as to such statements of accused, and not to the evidence of accused himself upon cross-examination.

7. WITNESSES—*Statements Made by Accused upon a Legal Examination—Accused a Witness in His own Behalf—Sections 4778 and 4781 of the Code of 1919—Witness Character and Accused Character—Case at Bar.*—In the instant case there was no effort to do more than to impeach accused because of the different statement made by him at the coroner's inquest, as instead of incriminating him, the statement distinctly exculpated him.

The testimony elicited affected only his witness character, and did not affect his accused character. The Virginia statute, however (section 4778, Code of 1919), seems to go the full length of requiring the accused person when he takes the stand to absolutely and in all respects waive his privilege against self-incrimination, as well as to subject himself to cross-examination as other witnesses.

8. CONFESSIONS—*Involuntary Confession—Reason for Exclusion.*—The controlling reason why involuntary confessions are generally inadmissible is that their introduction would violate the constitutional guarantee which protects an accused person from being required to give evidence against himself.

9. APPEAL AND ERROR—*Record—Loss of Instruction Given.*—A judgment will not be reversed on appeal because an instruction tendered by the defendant and refused by the court has been lost.

10. INSTRUCTIONS—*Record—Bill of Exceptions.*—Instructions are not a part of the record until they are made so by bill of exceptions, and it is the duty of the party seeking to avail himself of an alleged error, as to an instruction to see that the same is duly embodied in a bill of exceptions, and presented to the trial court for certification. An instruction offered and refused is no more a part of the record than a motion made and overruled, or testimony admitted or excluded, until it has been incorporated in the record by bill of exceptions. The duty of making up the record so far as bills of exceptions are concerned rests primarily upon the party seeking relief.

11. APPEAL AND ERROR—*Presumption of Error.*—The Supreme Court of Appeals will not presume error. It must be affirmatively shown.

12. APPEAL AND ERROR—*New Trial—Grounds for New Trial.*—A judgment will not be reversed for refusal to grant a motion for a new trial on the ground of after discovered evidence, where there is nothing in the record to show the specific grounds upon which the motion was made.

13. APPEAL AND ERROR—*New Trial—Motion for New Trial After Expiration of Term.*—The trial court has no power to grant a new trial after the judgment has become final by the adjournment of the court for the term.

Error to a judgment of the Circuit Court of Hanover county.

*Affirmed.*

The opinion states the case.

*P. A. L. Smith* and *McNeill & Bremner*, for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General*, and *Leon M. Bazile, Second Assistant Attorney General*, for the Commonwealth.

KELLY, P., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Hanover county, sentencing the defendant, Boxley Thaniel, to a term of twenty years in the penitentiary for murder in the second degree.

[1] 1. It is contended that the evidence was not sufficient to warrant a conviction of any higher offense than manslaughter. We are unable to adopt this view of the case.

The evidence introduced by the Commonwealth, though in conflict with that of the defendant in some particulars, was credited by the jury and showed, or tended to show, the following facts: The defendant and forty or more other colored persons, men and women, were attending a dance at a schoolhouse. Some time during the evening the defendant asked a certain girl whether she was going to dance with him. She answered in the negative, and he then caught hold of her hands, but she jerked away from him. Thereupon the defendant said: "You ain't going to dance with me, are you?" and, drawing his pistol, began shooting towards her and towards the side or end of the room. Immediately thereafter the deceased, William Shelton, began firing a pistol into the ceiling. These two persons appear to have been the only ones who did any shooting. Both moved towards the door, the defendant being just ahead as he reached the doorway, and at that point he whirled around and shot Shelton, who fell and died almost instantly. It is argued that the evidence leaves a question as to who

actually killed the deceased, but if certain of the witnesses for the Commonwealth told the truth, there is no room for doubt upon this point. The jury believed those witnesses, and their verdict concludes the question in this court.

There is nothing whatever in the evidence, either for the Commonwealth or for the defendant, to show that the latter had any occasion or excuse for shooting the deceased, or that there was any altercation or exchange of shots between them. The defendant himself, in testifying at the trial as a witness on his own behalf, said that the shooting began behind him, and that he turned and shot three times to protect himself, but he further stated in the next breath: "I didn't shoot anybody, but shot up in the air," and neither he nor any other witness stated that the deceased ever spoke to him, or shot at him, or made any hostile demonstration towards him.

The case of *Richardson* v. *Commonwealth,* 128 Va. 691, 695, 104 S. E. 788, 790, is cited and relied on for the prisoner. In that case we read: ."It has been long settled that where a homicide is committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation, it is not murder, but is manslaughter—voluntary manslaughter, if there be no further justification, and involuntary manslaughter if the killing be done in the commission of some lawful act, such as justifiable self-defense." This statement of the law manifestly has no application to the facts of the case in judgment. Here we have not even a claim of any sudden quarrel, or mutual combat, or provocation. The defendant testified that he did not shoot the deceased at all. The jury, upon abundant evidence, found that he did. The verdict binds us on this point, and the case, as it comes here, therefore, is one in which the defendant, with a deadly weapon

in his previous possession, killed the deceased without provocation or other extenuating circumstances. Upon these facts, even if he had been convicted of murder in the first degree, we could not interfere. *Hill's Case*, 2 Gratt. (43 Va.) 594, 606; *Howell's Case*, 26 Gratt. (67 Va.) 995; *Jones' Case*, 100 Va. 842, 855, 41 S. E. 951; *Thompson's Case*, 131 Va. 847, 109 S. E. 447, 454.

[2] It is true that no previous quarrel or grudge between the accused and the deceased was proved, but in order to constitute murder, even in the first degree, it is not necessary that the intent to kill should have existed for any particular length of time. It may be formed at the very moment of the killing. *McDaniel's Case*, 77 Va. 281, 284; *Thompson's Case, supra.*

2. The next question to be considered is an interesting and important one, and arises upon the following state of facts:

[3] On the day after the homicide the coroner held an inquest at which the defendant testified as a witness. While the record is not entirely clear upon the point, we shall assume, in order to give the defendant the full benefit of his contention, that he was duly summoned and that he did not voluntarily offer himself as a witness. He was not under arrest at that time, nor, so far as the record shows, had he been charged with the crime. Upon this assumption and under these circumstances, even though his testimony at the coroner's inquest may have tended to exculpate him, he cannot be regarded as having been there in the capacity of a witness in his own behalf. *Mullins* v. *Commonwealth*, 113 Va. 787, 792, 75 S. E. 193; Beale's Crim. Pl. & Pr., p. 315. He was subsequently indicted, and at the trial he went on the stand and testified fully as a witness in his own behalf, stating, among other things, that he did some shooting, but did not shoot the deceased. On cross-examination he was asked and required to answer, over objection by his counsel,

whether he did not, while testifying at the coroner's inquest, make this statement: "I didn't hear any shooting last night and I don't remember seeing any pistol laying beside the body. I did not do any shooting myself to my knowledge." To this inquiry the defendant replied: "Yes, I did make that statement." He was then further asked and required to answer, subject to like objection by his counsel, the following question: "You have, then, made two different statements about this shooting, the one which you made before the coroner's jury and the one which you have just made here—which is true?" His answer was: "The one that I have just made is true; I don't know why I made the other one."

[4, 5] It is insisted by counsel for defendant that this cross-examination was in violation of section 4781 of the Code, which is to the following effect: "In a criminal prosecution, other than for perjury, or in an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination, unless such statement was made when examined as a witness in his own behalf." To support the contention that the cross-examination of the accused, as above set out, was in violation of the terms of this statute, we are referred to the case of *Kirby* v. *Commonwealth*, 77 Va. 681, 46 Am. Rep. 747, and *Mullins* v. *Commonwealth, supra.*

In *Kirby* v. *Commonwealth*, there had been two trials, at the first of which the prisoner, Kirby, had gone on the witness stand in his own behalf. At the second trial he did not testify, but a third party was allowed to testify, over objection, that certain statements made by Kirby at the first trial were in conflict with the testimony of two of his witnesses at the second trial. The statute, Code 1873, chapter 195, section 22 (subsequently amended and now appearing as section 4781 of the Code quoted above), in force at the time the *Kirby Case* was decided, was to the following

effect: "In a criminal prosecution other than for perjury, or an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination." The court, in an opinion by Judge Lewis, held that the testimony was improperly admitted, and reversed the judgment for that reason. The decision was in conformity with the terms of the statute as then in force; and it was doubtless to meet the effect of that decision that the statute was subsequently amended by adding the words, "unless such statement was made when examined as a witness in his own behalf. Under the statute as it was when the *Kirby Case* was decided, if the defendant himself had first testified in his own behalf and had then been asked on cross-examination whether he had not made certain statements at the former trial contrary to those he was making at the second trial, it is possible that this court would have held, notwithstanding the then existing terms of what is now section 4781, that he was compellable to answer on the ground that in becoming a witness he waived, at least as to his credibility and witness character, the privilege which that statute was intended to protect. Some of the cases on the subject have, in principle and effect, gone thus far. See 3 Wigmore on Evidence, section 2276 (a), page 3151; Jones on Evidence, section 887, and numerous other authorities cited later on in this opinion. But we need not speculate as to what this court would have done in the *Kirby Case* under the circumstances here suggested. The fact remains that the accused did not testify on the second trial, and that the provisions of sections 4778 and 4781 were at that time vitally different from what they were when the instant case was tried, and the two cases are, therefore, readily distinguishable. It is clear, at any rate, that the previous statements of the accused, which were excluded in the *Kirby Case*, would be admissible now, because those statements had been made by him "as a witness in his own behalf."

In *Mullins* v. *Commonwealth, supra,* while the opinion does not state the facts fully, it appears from the record therein, which we have examined, that a witness was permitted, over the objection of the accused, to testify that the latter, as a witness at the coroner's inquest, had stated that a certain other person had made threats against the deceased. Judge Buchanan, in delivering the opinion of the court in that case, quoted section 3901 of the Code of 1887, which is identical with section 4781 of the Code of 1919, and then said: "The introduction of the evidence in question was forbidden by the section of the Code quoted, and the objection of the accused ought to have been sustained." Citing *Kirby's Case, supra.*

In the *Mullins Case,* the former statements of the accused which the court said were improperly admitted had not been made as a witness in his own behalf, but at a coroner's inquest, and were testified to by a third party as a witness in chief for the Commonwealth. The case would, therefore, be in point here as authority for the accused but for the fact that there is (contrary to his contention) a clear distinction between a case in which the Commonwealth undertakes to prove by evidence in chief statements made by an accused person upon a former legal examination (not as a witness for himself), and a case in which the Commonwealth merely seeks to bring out, or to lay the foundation for bringing out, such statement by cross-examination of the prisoner himself when he takes the stand in his own behalf.

When the statute (now section 4778, Code 1919) making a person charged with crime competent to testify first made its appearance as a part of the law of this State, the prototype of what is now section 4781 of the Code had long been in force in Virginia. The original terms of the latter section were as follows: "It shall not be lawful in any criminal prosecution, other than a prosecution for perjury,

or an action upon a penal statute, to give in evidence against the accused any confession or statement which he may have made in the course of his legal examination as a witness before any competent tribunal." Acts 1847-8, chapter 21, section 48, page 153.

Since the act of January 21, 1886 (Acts 1885-6, page 31), and, until the adoption of the Code of 1919, the statute law in this State respecting the right of an accused person to testify in his own behalf remained as follows:

"In any case of felony or misdemeanor, the accused may be sworn and examined in his own behalf, and be subject to cross-examination as any other witness; but his failure to testify shall create no presumption against him, nor be the subject of any comment before the court or jury by the prosecuting attorney." (Code 1887, section 3897.)

The Virginia decisions which have dealt with this statute have not involved the exact question now under consideration and throw very little light upon it. See *Watson* v. *Commonwealth,* 87 Va. 608, 613, 13 S. E. 22; *Litton* v. *Commonwealth,* 101 Va. 833, 844, 44 S. E. 923.

A significant change was made in the phraseology of the statute by the Code of 1919, and the section (in effect when the instant case was tried) now reads as follows:

"In any case of felony or misdemeanor, the accused may be sworn and examined in his own behalf, *and if so sworn and examined, he shall be deemed to have waived his privilege of not giving evidence against himself,* and shall be subject to cross-examination as any other witness; but his failure to testify shall create no presumption against him, by the prosecuting attorney." Code 1919, section 4778. (Italics added to indicate amendment.)

To this section the revisors appended the following very pertinent note: "Under this section, as it stood before the revision, some doubt was expressed as to the meaning of the phrase, 'subject to cross-examination as any other wit-

ness.' This doubt was as to whether the accused waives his privilege of not testifying against himself and may stop at any stage when a question is asked which would tend to incriminate him. While the revisors did not concur in this doubt, they thought it well to put the language of the section in such form as would settle the question, expressly declaring that if the accused be 'so sworn and examined, he shall be deemed to have waived his privilege of not giving evidence against himself.' "

[6] Having in mind the history, purpose and present terms of the statutes, sections 4778 and 4781, we have no difficulty in deciding that the action of the trial court, in requiring the defendant to answer as to the statements made by him at the coroner's inquest, was not in any sense a violation of section 4781. The "evidence against the accused" contemplated by that section in its inception necessarily referred to evidence by third parties, for, as we have seen, persons accused of crime could not testify when that act was passed, nor for a long time after its passage. No such "evidence against the accused" has been offered or allowed in the case at bar. Section 4778 permits the accused himself to testify, but to do so he must accept all of the terms of that section, and (1) "be deemed to have waived his privilege of not giving evidence against himself;" and (2) "be subject to cross-examination as any other witness."

The privilege the accused thus waived in going on the stand for himself was the very privilege which section 4781 was intended to protect, and the cross-examination to which he thus voluntarily exposed himself further cut off his right to rely upon the protection of that section. The right to cross-examine him "as any other witness" implied the right to impeach his credibility by the same rules as those applicable to other witnesses. To discredit the witness, if there be reason to doubt his truthfulness, is one of the legitimate and leading objects of cross-examination. 1 Thompson on Trials, sec. 405; 1 Greenleaf on Evidence, sec. 446.

[7] The language of the Virginia statute seems to us conclusive of the question under consideration. It may be observed that in this particular case there is no effort to do more than impeach the witness, because the statement which he made at the coroner's inquest, instead of incriminating him, distinctly exculpated him from any connection with the homicide. It was only because he was making a different statement, and thus contradicting himself, that he was cross-examined by the attorney for the Commonwealth at the trial. In other words, the evidence which was brought out with respect to the statements of the accused before the coroner merely affected his character as a witness, and not his guilt or innocence. The testimony elicited affected only his "witness character," and did not affect his "accused character." An interesting discussion of the difference between these two capacities of an accused person on the witness stand, which might be pertinent and important under enabling statutes differing in terms from ours, will be found in 3 Wignore on Evidence, section 2277. The Virginia statute, however, as already pointed out, seems to go the full length of requiring the accused person to absolutely and in all respects waive his privilege against self-incrimination, as well as to subject himself to cross-examination as other witnesses. Under our statute, therefore, there is no real occasion for going into a discussion of just how far the right of cross-examination "as any other witness" entitles the Commonwealth to bring out on cross-examination facts relating to the guilt or innocence of the accused, as distinguished from facts which might be used in impeaching his credibility.

Even in those States, however, in which the enabling statute merely gives the accused the right to testify, without requiring any waiver of privilege, and without expressly giving the right of cross-examination by the State, it has generally been held that no difference was intended "be-

tween the witness character of the accused and that of any other witness." 1 Thompson on Trials, sec. 642; 2 Wigmore on Evidence, sec. 890; *Hicks* v. *State,* 99 Ala. 169, 13 So. 375; *Smith* v. *State,* 137 Ala. 22, 34 So. 396; *Commonwealth* v. *Tolliver,* 119 Mass. 312; *Harrold* v. *Territory,* 18 Okla. 395, 89 Pac. 202, 10 L. R. A. (N. S.) 604, 11 Ann. Cas. 818; *Fitzpatrick* v. *U. S.,* 178 U. S. 304, 20 Sup. Ct. 944, 44 L. Ed. 1078; *Sawyer* v. *U. S.,* 202 U. S. 150, 165, 26 Sup. Ct. 575, 50 L. Ed. 972, 6 Ann. Cas. 269; note to *People* v. *Tice,* 131 N. Y. 651, 30 N. E. 494, 15 L. R. A. 669.

In *Commonwealth* v. *Tolliver, supra,* the court refused to permit the introduction of evidence of certain statements, in the nature of confessions, made by the accused, on the ground that the same were unduly and improperly influenced by promises or threats. Afterwards the accused offered himself as a witness in his own behalf, and the court held that upon cross-examination he could be fully interrogated by the prosecuting attorney in regard to such statements and confessions, as affecting his credit. In that case, the Massachusetts Supreme Court said: "By availing himself of the right to take the stand as a witness, the defendant became a general witness in the case, subject to the same tests of truthfulness, and the same rules as to examination and cross-examination, as are applicable to all other witnesses. Being sworn to tell the truth, the whole truth, and nothing but the truth, he waived all right to keep anything back, even in the case of questions, the answers to which would tend to criminate himself. * * * Among the modes of impeachment, he, like any other witness, may be cross-examined as to a conflicting account of the matter given by him on some other occasion. Such an inquiry may be gone into, not for the purpose of proving the truth of the former account, but as an impeachment of his credit as a witness. * * * He would still be at liberty to testify that his alleged confession was not true, and to offer such

explanation as to the inducements and circumstances under which he gave it as he may see fit."

In *Hicks* v. *State, supra,* the Alabama Supreme Court held that when a defendant in a criminal case elects to testify in his own behalf, he becomes subject to cross-examination like any other witness, and may be impeached by proof of contradictory statements previously made by him, even though such statement consist of declarations or admissions on his part which have first been offered by the State as evidence against him and excluded because not shown to have been voluntarily made.

The syllabus to the report of the *Hicks Case* refers to Alabama Code, section 4473, as the provision under which the accused was given the right to testify in his own behalf, but the text of that section does not appear in the report of the case. We assume that the Alabama statute is silent as to the right to cross-examine; but, whether so or not, the case is directly in point.

In *Harrold* v. *Territory of Oklahoma,* 18 Okla. 395, 89 Pac. 202, 11 Ann. Cas. 818, 10 L. R. A. (N. S.) 604, it was held that when a prisoner on trial voluntarily takes the stand in his own behalf, he waives all privilege which he is entitled to by remaining silent, and subjects himself to the same rules of cross-examination as any other witness, and that he may be asked whether he has not theretofore made certain statements, admissions or confessions inconsistent with his testimony at the trial; that if he admits making such statements, he may explain, or show the circumstances or conditions under which they were made; that if he denies making such statements, then the State, on rebuttal, may prove the admissions or confessions made by him; and that this may be done, even though the admissions or confessions would not have been admissible if he had remained silent.

In that case the court, in the course of the opinion, said: "The most serious question presented is, did the court err

in permitting the prosecution, on cross-examination, to ask the prisoner if he had not made certain statements and admissions inconsistent with his testimony, and which were asked for purposes of impeachment if denied, and to show his criminality if admitted? These same admissions and confessions had been excluded by the court as not having been voluntarily made when offered by the prosecution in support of its case in chief. When the rule prevailed that a prisoner on trial for a crime was not permitted to speak or be heard in his own defense, the rule was established that no confession made by the prisoner should be introduced against him if the same was induced by fear, under duress, or through promise of leniency or immunity. A confession or admission made by the prisoner, in order to be admissible against him, must have been made voluntarily and freely. The strongest reason for the strictness of this rule was that the prisoner was not permitted to deny or explain the statements attributed to him, or to offer any explanation of the circumstances under which he was induced to make them. He was required to keep silent, and hence no evidence of admissions, confessions, or inculpatory statements was allowed to be given in evidence against him until it was made to appear to the court that the same were freely and voluntarily made. Now, the prisoner is permitted to testify the same as any other witness, if he voluntarily offers himself. So long as he remains silent, the reason for the rule of excluding confessions not voluntarily made remains, but, when he waives his privilege, and becomes a witness for himself, the reason for the former rule ceases, and he has the privilege and the opportunity to deny or admit any statement or admission attributed to him, and, if he admits making any, he has the right to explain all the conditions and circumstances under which the same were given; and the jury can judge of the truthfulness of this class of testimony the same as of any other. We see no

sound reason why a prisoner, charged with a crime and who voluntarily becomes a witness in his own behalf, should any longer be entitled to any special privileges which are not allowed to every other witness. If any other witness has made statements out of court inconsistent with or contrary to his testimony given in court, he may be asked if he has not made such statements, and, if he admits them, he may explain the conversation and the circumstances and the inducements under which the statements were made. If he deny having made the statements, then he may be impeached by showing that he did make them. This being the rule to which every other witness subjects himself when he becomes a witness, we see no sound or plausible reason why the same rule should not apply to the witness who is charged with a crime, and who testifies in his own behalf. He must weigh the consequences and determine the results before he goes upon the stand; he must be conscious of his vulnerable points, and, if he is unable to withstand the attacks to which every other witness for or against him must subject himself, he should maintain his silence and retain all his privileges.

"In a well-considered and lengthy opinion by Mr. Justice White, containing voluminous citations of authorities, and a review of the history of the law relating to the admissibility of confessions, delivered in the case of *Bram* v. *United States,* 168 U. S. 532, 42 L. Ed. 568, 18 Sup. Ct. Rep. 183, it was said: 'In criminal trials, in the courts of the United States, wherever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the fifth amendment to the Constitution of the United States, commanding that no person "shall be compelled in any criminal case to be a witness against himself. * * * '"

Again, in the *Harrold Case,* the Oklahoma court said: "If it be true then, and, in the light of the holding of the

highest court in the nation, it cannot be doubted, that the rejection of involuntary confessions is because of the constitutional rights of the accused not to be compelled to be a witness against himself, then, by the decisions of the same high court, when the prisoner voluntarily becomes a witness in his own behalf, he waives this constitutional privilege, and subjects himself to the same rules as to the examination of witnesses as any other witness. It seems that it must necessarily result that it is violative of no constitutional right, or of the principles of civil liberty, to require a prisoner, while testifying as a witness in his own behalf, to answer any question, the answer to which might tend to impeach or discredit him."

[8] In the note to the *Harrold Case,* 10 L. R. A. (N. S.) 605, it is said: "But the courts are not in harmony as to the right to cross-examine the accused as to confessions which would not be admissible as original evidence against him, although the weight of authority seems to be against the doctrine of *Harrold* v. *Territory."* This comment in the note is not supported by the authorities cited therein, and, judging from the numerous decisions referred to in the Massachusetts and Alabama cases, *supra,* the comment seems to be unsupported by the authorities generally. The only cases cited to support it are *Shephard* v. *State,* 88 Wis. 185, 59 N. W. 449, and several Texas cases.

The *Harrold Case,* it is true, was reversed by the United States Circuit Court of Appeals, Eighth Circuit (169 Fed. 47), in an opinion by Judge Sanborn, for whom we entertain the highest respect, but we are unable to concur in the fundamental proposition upon which that opinion seems to be rested, namely, that "involuntary confessions of accused persons are inadmissible to impeach them as witnesses on the same ground that hearsay and all other incompetent evidence is inadmissible to impeach other witnesses, because they are unworthy of belief." The controlling reason, as

we think, why involuntary confessions are generally inadmissible is that their introduction would violate the constitutional guarantee which protects an accused person from being required to give evidence against himself. See opinion of Chief Justice White in *Bram* v. *United States,* 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568, cited by the Supreme Court of Oklahoma in the *Harrold Case.* Furthermore, it seems reasonably clear from Judge Sanborn's opinion that if he had been dealing with a statute containing the provisions of section 4778 of the Code of 1919, he would have affirmed the Oklahoma court.

In so far as our examination has gone, we think the weght of authority supports the conclusion that there was no error in requiring the defendant in this case to answer the questions relating to his testimony before the coroner, and we are entirely satisfied, particularly in view of the terms of our statute, that the better reason is in accord with this conclusion.

[9] 3. It appears from the record that an instruction tendered by the defendant and refused by the court has been lost, the clerk certifying with respect thereto as follows: "I have not been able to find the instruction referred to in bill of exception No. 3, which instruction was modified by the court, and hence I am unable to certify the same in the record." It is contended that the accused, without any fault of his own, is thus prevented from presenting to this court the question arising with respect to this instruction, and that, therefore, the judgment should be reversed.

[10, 11] Instructions are not a part of the record until they are made so by bill of exceptions, and it is the duty of the party seeking to avail himself of an alleged error, as to an instruction to see that the same is duly embodied in a bill of exceptions, and presented to the trial court for certification. An instruction offered and refused is no more a part of the record than a motion made and overruled, or testi-

mony admitted or excluded, until it has been incorporated in the record by bill of exceptions. The duty of making up the record so far as bills of exceptions are concerned rests primarily upon the party seeking relief. This court will not presume error. It must be affirmatively shown. There is no merit in this assignment, and the same is overruled.

[12, 13] 4. After the term at which the defendant was convicted had ended, he made a motion for a new trial on the ground of after-discovered evidence. Even if the trial court had the power to grant a new trial after the sentence of conviction had become final by the adjournment of the court for the term, we would be unable to reverse the judgment in this case for refusal to grant the motion, because there is nothing in the record to show the specific grounds upon which the motion was made. But the question is concluded by the Virginia decisions on the subject. The circuit court had no power to grant the motion. *Allen* v. *Commonwealth,* 114 Va. 826, 77 S. E. 66; *Harley* v. *Commonwealth,* 131 Va. 664, 108 S. E. 648.

For the same reasons, and upon the same authority, we must overrule the assignment based upon the refusal of the court to grant a new trial for alleged misconduct of counsel who appeared for the prisoner in the lower court.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*