## Staunton.

## VICTOR DINGUS v. COMMONWEALTH.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*D. F. Kennedy, E. Warren Wall* and *M. M. Long*, for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

PRENTIS, C. J., delivered the opinion of the court.

The accused, Victor Dingus, has been found guilty of murder in the first degree and sentenced to death by electrocution.

The outstanding facts of the case are, that he, with

several other young men, was traveling by automobile from Coeburn, Virginia, to Twin Branch, West Virginia, and on that journey stopped in Russell county, near the private garage of H. T. Robins and entered it for the purpose of stealing gasoline. The owner, Robins, discovered that they had broken into his garage and began to shoot, either in the air or in the direction of the garage, for the purpose of scaring the robbers away. The accused shot before he came out of the garage through the door, and after he came out, as he says, after he had been shot through the thigh, shot and killed Robins.

We have omitted some details, but the evidence of the accused himself is sufficient to support this statement.

It is not necessary to refer to all of the assignments of error. The rules of the criminal law are sufficiently established to make constant repetition unnecessary.

Among the assignments made for the accused is that he did not have a fair and impartial trial.

It is shown that the homicide occurred during the night of June 23rd; that there was much indignation in the locality at the outrageous crime; that the judge of the circuit court adjourned the term in another county for two weeks and called a special term of the Circuit Court of Russell county two days later, June 25th, for the purpose of trying this case, and began the trial July 2nd. The case was submitted to the jury July 4th, and the verdict returned July 5th. Three prominent local attorneys were employed to assist the attorney for the Commonwealth in the prosecution.

■■ In support of this assignment, it is shown that the attorney for the Commonwealth, in his appeal to the jury, among other things, said: "Gentlemen of the

jury: If it had not been for the defendant there firing that shot and killing the deceased, his widow would not be here in mourning weeds." The attorney for the accused objected to this statement as highly improper and prejudicial, and moved the court to instruct the jury to disregard it; to which the judge replied: "She is here, you need not mention it," and the defendant excepted. Thereupon the judge was asked to instruct the jury to disregard the statement. The judge replied: "I said she is here and you need not mention it."

This is so much like the occurrence in *Parsons* v. *Commonwealth*, 138 Va. 764, 121 S. E. 68, 73, the difference being that there the objectionable remarks were made, not by the attorney for the Commonwealth, but by one employed to assist in the prosecution, that we think it only necessary to repeat what was there said: "We cannot agree with the learned trial judge, either that the remarks were not improper, or that he should not have directed the jury to disregard them. Whatever liberties are permitted to counsel for persons who are guilty of crime, to appeal for mercy for their clients (though there is no evidence of any such appeal in this record), and to refer to those near and dear to them who will vicariously suffer under such circumstances, the prosecutor has no corresponding liberty. The Commonwealth does not rely either upon prejudice or sympathy for the enforcement of its laws. That every normal human being does sympathize with the widow and children of the deceased is true, but this fact in no way assists in determining either the guilt or the innocence of the accused, and the attention of the jury charged with passing thereon should not be thus distracted. The court should have corrected this inadvertence of the assistant

prosecutor. Facts which cannot be proved because irrelevant can afford no proper basis for argument. 30 C. J. 177, section 400."

■ Again, the Commonwealth's attorney said: "Gentlemen of the jury, we want a verdict at your hands that will say to the criminals of Wise county and the criminals of Tazewell county and the criminals of Kentucky and Tennessee, that they cannot make Russell county their playground."

While it may be true that no conviction should be reversed solely because of such a statement as this, certain it is that the prosecuting attorneys should always bear in mind that they speak not for themselves but for the Commonwealth; and that every person charged with crime is entitled to have his case determined solely by the evidence produced at his trial. There is no testimony in this case as to criminals of Wise county, Tazewell county, or those of Kentucky or Tennessee; and no such evidence referring to other criminals could have been introduced against the accused, had it been offered. The accused could neither be punished for their crimes nor have his punishment enhanced because of their iniquities. Even though not usually alone a sufficient reason for reversal, the trial judge should always restrain such improper, irrelevant statements, and require prosecuting attorneys to base their arguments upon the evidence in the particular case on trial.

■■ Again, the Commonwealth's attorney said to the jury: "Give him the death penalty. What does life imprisonment mean to a criminal with pardon so easy?"

The court overruled an objection to this statement without comment.

This court has never had a question precisely like

this to consider, so far as we know. We have no doubt, however, of its impropriety. The executive department of this government was not on trial. Upon such an occasion, such a reflection upon the executive department as a reason for imposing the death penalty could not be justified and should not under any circumstances be tolerated. So far as we are informed, there is no just or general criticism of the past exercise of executive clemency by any Governor of Virginia. There was no reason to suppose that any Governor would improperly exercise the pardoning power in favor of the accused in this case. That there are cases in which executive clemency should be exercised cannot be doubted, but such cases have passed entirely beyond the jurisdiction of courts and juries. No jury should be urged to impose the death penalty upon any accused person because the attorney for the Commonwealth thinks that pardons in this State are easily secured. Such a remark is a reflection upon an independent department of the government which the judiciary, when acting officially, should be independent enough to rebuke.

The remark was highly improper, unworthy of the occasion, should have been rebuked by the trial judge, and was harmful to the accused.

We think it appropriate to repeat what was said in *Mohler* v. *Commonwealth*, 132 Va. 731, 111 S. E. 454, 460: "The attorney for the Commonwealth represents the people of the State, who, in their collective capacity, are just as anxious that innocent men shall be acquitted as they are that guilty men shall be convicted. The prosecuting attorney is selected for the purpose of representing this sentiment. The presumption of innocence attends an accused person at every stage of the trial until his conviction, and the

prosecuting attorney should respect this presumption. If, after the testimony has been presented and in the performance of his public duty, he concludes therefrom that he should ask for a conviction, it is not only his right, but his duty, to sum up the evidence and, in argument, to give the jury his reasons based thereon for his conclusion that it justifies such conviction."

The mental attitude of the attorney for the Commonwealth in this case, as indicated by these remarks, ignores these salutary doctrines.

■■ Another exception is based upon the refusal of the court, upon motion of the accused, to give instruction No. 11. This is an instruction which is nearly always given upon the motion of the prosecutor in every homicide case, and while it has been under criticism, it has frequently been held to be entirely appropriate. *Sims* v. *Commonwealth*, 134 Va. 736, 115 S. E. 382; *Groety* v. *Commonwealth*, 135 Va. 512, 115 S. E. 561. The instruction is to the effect "that every homicide in this State is presumed to be murder in the second degree, and the burden is upon the Commonwealth to elevate the offense to murder in the first degree, and the burden rests upon the defendant to reduce the said offense from murder in the second degree to a lower offense or to show excuse or justification."

No reason is assigned for the refusal to give this instruction upon motion of the accused, and under the peculiar facts of this case it was error to refuse it. If there is a reasonable doubt as to whether the accused is guilty of murder in the first or second degree, that doubt should be resolved in his favor. The case is one which, but for the failure of the court to restrain the unbridled impetuosity of the prosecutor, there might have been a different verdict, for though they found

the crime to be murder in the first degree, they might have imposed imprisonment in the penitentiary as his punishment. Under the rule which debars the accused here from invoking the law of self-defense, because he brought on the difficulty by his own crime, and because of the presumption of intent arising from the use of a deadly weapon, it is not probable that this court would reverse the verdict of murder in the first degree had not the record disclosed the harmful errors in the procedure to which we have referred.

■ ■ That the jury imposed the death penalty in this case is perhaps explained by another astounding circumstance to which our attention is asked. It is shown by affidavits which are not denied, that about eleven o'clock p. m. on July 4th, the jury having failed to agree, and while they were deliberating, a deputy sheriff (who had been sworn to keep them together and not to discuss the case with them nor to permit any one else to do so), after the jury had retired for the night, and before they had agreed upon a verdict, told them that he was on the look-out for a mob to come to lynch the accused, Victor Dingus, together with four other accused persons connected with the robbery of the garage, and moreover stated that a 'phone message had been received from the mob that they wanted to know whether the jury had agreed upon a verdict, and he thought that he, the deputy sheriff, "could hold the mob off until morning and give them a chance to agree," and made other statements of like character which are set forth in detail in the affidavits. The following morning the jury returned the verdict.

That conduct such as this of an official of the court should be severely condemned, and, had it been brought to the attention of the trial court before the final judgment, that it would have necessitated setting aside

the verdict of the jury, there can be no doubt whatever. In this State it has long been held that matters occurring after final judgment and adjournment of the term, cannot be introduced into the record by affidavit or otherwise, and so we will not consider these affidavits as parts of the record. We cannot do so without distinguishing or disregarding these precedents. *Allen* v. *Commonwealth*, 114 Va. 826, 77 S. E. 66; *Harley* v. *Commonwealth*, 131 Va. 664, 108 S. E. 648; *Thaniel* v. *Commonwealth*, 132 Va. 795, 111 S. E. 259; *Oliver* v. *Commonwealth*, 151 Va. 533, 145 S. E. 307, 309. It is not necessary in this case, in order to correct this wrong, to depart from these precedents, but where such facts are shown probably to have induced a jury to impose the extreme penalty, and the facts were not discovered until too late to be presented to the trial court, it is probable that they would be considered by the executive as certainly justifying clemency.

Because of the errors which are shown in the record to which we have referred, we are of opinion to reverse the judgment and remand the case for a new trial to be had according to law.

*Reversed.*

HOLT, J., CONCURRING: I concur with the majority opinion wherein it holds that this case should be reversed.. The argument used by the attorney for the. Commonwealth, to the effect that the death penalty ought to be imposed because it was possible that some Governor of Virginia might improperly commute any prison sentence, is not warranted by the history of our State. No Governor of Virginia has ever abused that power. It was proper that counsel should ask that a verdict of first degree murder be returned, but the reasons which he assigned for the punishment sought

were highly prejudicial. For this reason and for no other reason, I think that the case should be reversed.

CAMPBELL, J., DISSENTING: While I fully concur in the conclusion reached in the majority opinion that the remarks of counsel representing the Commonwealth were highly improper, and in a doubtful case should lead to a reversal, I am unable to concur in the conclusion that the instant case should be reversed, for the reason that in my opinion the record discloses that no other than a verdict of murder in the first degree could have been properly rendered by the jury.