## Staunton.

## Kirby v. The Commonwealth.

### September 13th, 1883.

1. CRIMINAL PRACTICE—*Evidence—Res gestæ.*—The admissibility of declarations of the injured party as part of the *res gestæ*, depends on whether or not they were made recently after the injury, before sufficient time had elapsed for the fabrication of a story.

2. IDEM—*Idem—Examination of accused.*—Code 1873, chapter 195, section twenty-two, provides that "in a criminal prosecution, other than for perjury, or an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination." Therefore, evidence that the statements of witnesses for the accused conflict with the testimony of the accused as delivered on his examination as a witness at a former trial, is inadmissible.

3. IDEM—*Idem—Idem—Case at bar.*—In M.'s store, at night, a man entered, and suddenly, without apparent provocation, shot M. through the head. M. exclaiming, "You have killed me," ran out at the door, around the house, to the door of another room in the same house, occupied by R., which door was eighty feet from the point in the store at which he was shot. Upon being admitted he said: "I am shot; William Kirby has shot me." Not more than two minutes elapsed between the shooting and this declaration. At a former trial accused testified as a witness in his own defence. At the succeeding trial he did not. Evidence was introduced by the commonwealth to prove that statements made at this trial by witnesses for the defence were in conflict with the testimony of the accused at the former trial.

HELD:

1. The declarations of the injured party were admissible as evidence as part of the *res gestæ*. Under the circumstances, it is unreasonable to suppose that there was time or capacity to fabricate a story.

2. The evidence to prove conflict between the testimony of accused at the former trial, and the statements of witnesses for the defence at the last trial being objected to, was inadmissible.

Error to judgment of circuit court of Albemarle county, rendered 1st February, 1883, affirming judgment of county court of said county, sentencing William Kirby, the plaintiff in error, to confinement in the state penitentiary for the term of ten years; said Kirby having been found guilty upon an indictment for maliciously shooting, with intent to kill, one Stephen D. Mayo.

The facts and points raised are fully stated in the opinion of the court.

*Frank Gilmer,* and *James L. Gordon,* for the prisoner.

Exception number one is taken upon the admissibility of the testimony of one Truman Richardson, as to what Stephen D. Mayo said to him as to who shot him (Mayo) on the night in which he was shot, after putting his hand to his head and saying, "Oh my, you have killed me," walking eighty feet out of a dark room from where he was shot, around to Richardson's room, knocking several times at the door of Richardson's room, calling to Richardson, and Richardson had finished putting on his pants, asked who was there, and being told, opened the door, let him in and asked who shot him. No one save Mayo and Richardson were present during this conversation. All of this took place in a minute or a minute and a half after the shooting, as near as Mayo could judge, and not in the presence of the accused.

1st. It is not a part of the *res gestæ.* What constitutes a part of the *res gestæ* is a question long supposed to be governed by no fixed rules of law, but left to the sound discretion of the court in each case; but that view of deciding what is, and what is not a part of the *res gestæ,* is no longer the law, but is to be decided by fixed rules of law as other principles of evidence. *Land & Wife* v. *The Inhabitants of Tyngsborough,* 9 Cush. 36.

Facts which constitute the *res gestæ* must be such as are so connected with the very transaction or fact under investigation as to constitute a part of it. Declarations, to be a part of the *res gestæ,* must be made at the time the act is done, and must be

calculated to unfold the nature of the act as obviously to constitute one act. 1 Greenl. Evi., 10th edi., sec. 108, n. 1, on page 2 ; *Haynes* v. *The Commonwealth,* 28 Gratt. 942.

The fact that Mayo had not time to concoct a story before he told Richardson who shot him, is not a test of what is the *res gestæ.* Some men can concoct a story under circumstances that other persons could not, and in a shorter interval of time. With such a test, what is a part of the *res gestæ* would be but mere speculation ; hanging as it would on such a multitude of uncertainties.

" The case of *Fields* v. *The State,* reported in 34 American Law Reports, 476, and the authorities there cited, when interpreted in connection with *Haynes' Case* in 28th Grattan," do not sustain the reason given for overruling this exception. No such point was raised or appears to have been considered by this court in *Haynes' Case ;* and in *Fields' Case,* only two cases are cited to sustain such a principle, *Rex* v. *Foster,* 6 C. & P. 325, and *Insurance Co.* v. *Mosley,* 8 Wall. 397. This last case was decided by a divided court, and the very court that decided the *Fields' Case,* says that " the opinion of the minority is the sounder opinion both upon principle and authority."

A witness cannot testify as to the name of a person from whom the person injured said that he received the injury, be the interval of time and length of distance ever so short and made to the first person met. Such evidence would be mere declarations, not a part of the *res gestæ.* 1 Greenl. Evi., 10th edi., sec. 102 and n. 3 ; *Bacon* v. *The Inhabitants of Charlton,* 7 Cush. 581; *Land and wife* v. *The Inhabitants of Tyngsborough,* 9 Cush. 36 ; *The Commonwealth* v. *Harwood,* 4 Gray, 41 ; *Haynes* v. *The Commonwealth,* 28 Gratt. 942.

The above rule is enlarged in cases of rape only to permitting proof that the prosecutrix made a complaint of being outraged, but not the particulars nor the name of the person who committed the outrage on her. *Broggie* v. *The Commonwealth,* 10 Grat. 722.

The statement made by Mayo to Richardson was mere heresay or secondary evidence, intended to bolster up Mayo's statement.

Here the best evidence had been produced. A statement of the same facts as made by the witness Mayo, is proved by Richardson to have been made to him before the trial. Richardson's evidence in this cause is merely cumulative, and its only effect is to strengthen what Mayo has said on oath, by proving what Mayo said when he was not on oath. Which is clearly illegal. 1 Greenl. Evi., 10th ed., § 124, n. 1, American Crim Law; Wharton's notes, 4th Rev. ed., § 82; 1 Starkie on Ev., 7th Amer. ed., 221; 33 Wend. 50; *Haynes* v. *The Commonwealth*, 28 Grat. 942; *Broggie* v. *The Commonwealth*, 10 Grat. 822.

Exception number two was taken to the admission of the evidence of H. B. Burnley of what William Kirby testified to on a former trial, when he was introduced as a witness in his own behalf, and after Armstrong and Bagby had been introduced by the accused to prove where he, the said William Kirby, was on the night of the 3d of July, 1882, and the said Kirby had declined to testify in his own behalf on this trial. The evidence of H. B. Burnley, as to what the accused had stated as a witness in a former trial, was illegal and indismissible evidence.

Prior to the act of March 6th, 1882, the accused could not testify on a trial for malicious shooting with intent to maim, disfigure, disable and kill; but under that statute " the accused (when so indicted) may be sworn and examined as a witness in his own behalf." Acts of 1881–'82, chapter 228.

The law was not further extended as to evidence in criminal cases by this statute, than to extend the privilege to the accused to testify in his own behalf if he so desired; whilst the prosecution stood on no better ground than it did before its passage.

It was the well settled law of England long before the separation of the American colonies from the mother country, that no one could be compelled to give evidence that would criminate himself. As early as 1776, and at each subsequent constitutional convention of Virginia, it has been enacted that, *nor can*

*he be compelled to give evidence against himself.* Virginia Constitution, Article 1, § 10.

This provision has been held to apply to cases where a witness who had testified before a coroner's jury under a statute that provided, "but any statement made by such person as such witness shall not be used against him in any prosecution against himself"—that said witness could not be compelled to testify. *Cullen* v. *The Commonwealth,* 24 Grat. 624.

William Kirby, when he testified on the former trial, was a witness upon a legal examination, although he testified in his own behalf. What he then said could not be proved by H. B. Burnley, who heard him testify; for the first trial was not for perjury or an action on a penal statute, which are the only two instances where statements of a witness in a legal examination are admissible in evidence in Virginia. Acts 1878–79, chapter 10, section 22, Rev. Crim. Code.

These counsel then proceeded to discuss their exception number three, as to the sufficiency of the evidence to warrant the verdict.

*Attorney-General, S. F. Blair,* for the commonwealth.

It is objected by the prisoner that the declarations of Mayo are not part of the *res gestœ,* but hearsay and secondary, and made in the absence of accused, William Kirby. This question this court is called on now to determine.

Mayo's declarations to Richardson, although made in the absence of his fugitive assailant, were so intimately and closely connected with the shooting, as to become a part and parcel of the very transaction itself, because—

1st. The distance was so short, only eighty feet.

2d. The time that intervened was so short, only one minute, or perhaps one and a half minute.

3d. The said Mayo could not in that short distance and time have fabricated a story.

The foregoing considerations always control and influence a court in determining whether such declarations are admissible as part of *res gestæ*, or are so remote in distance and time as to amount to mere hearsay.  If ever there was a case where the doctrine of *res gestæ* should apply, it is the present one.

The circumstances are so knit together with the shooting itself that they cannot be disconnected.  The very fact that Mayo's head was penetrated by a ball from Kirby's pistol of itself, precludes the idea that Mayo was in such a condition of mind as to manufacture such a story.  The shock to his system, the nature of the wound, the blood running over his face, the smoke of Kirby's pistol hardly cleared away, all render absurd the suggestion that Mayo could, under these circumstances, concoct a false and malicious statement.  The truth is, the interval of time was so short, and the proximity of the store so close, and the nature of the wound so terrible, that the statements of Mayo came out of his mind without thought, reflection, or design. See Wharton's Criminal Evidence, section 262–3, pages 183–4; section 296, page 206, and notes; *Heath's Case*, 1st Robinson's Reports, 785; *Poindexter's Case*, 33 Gratt.; *Rawlin's Case*, 1 Leigh, page 581; 1st Greenleaf's Evidence, section 807; *Warren* v. *State*, 35 American Reports, 745; *Hornbeck* v. *State*, 35 American Reports, 608, and cases cited there by Justice Gilmore; *Field* v. *State*, 34 American Reports, 476.  This latter case, by a note on page 479, discusses the whole doctrine of *res gestæ*.  In the case of *Little* v. *Commonwealth*, 25th Gratt. 921, even the prisoner's declarations were admitted as evidences as part of the *res gestæ*.

The supreme court of the United States adopted the same view in the case of the *Insurance Company* v. *Mosely*, 8 Wallace, 397.  *Hayne's Case*, 28 Gratt. 944, was one of simple larceny from the person, not robbery and attempted murder.  There was nothing in that case to fix the interval of time; it simply states that the prosecutor went a few doors and complained, &c. He does not in terms say that he went *immediately*.  He was so

·asked, but in his answer does not so say. A man who lost property might make up a lie in a short interval; not so with a man who had been shot through the head with a pistol ball.

The second bill of exceptions raises the question of the right of the commonwealth to prove on the trial of this case what Kirby, the prisoner himself, said on a former trial, which was utterly at variance with the testimony of his own witnesses on present trial by whom he proposed to prove an *alibi*, and which also materially varied from what these same witnesses swore to at the present trial on the same point.

It is well established that a prisoner may be both confronted and impeached by his answers on a former trial. He may be discredited or impeached in the same way as any other witness. This law is settled by numerous cases. *State* v. *Clinton*, 67 Mo. 380, or 29 American Reports, 506. This case declares that a prisoner may be impeached as any other witness. *State* v. *Beale*, 34 American Reports, 263; *State* v. *Hardin*, 46 Iowa, 623; 26 American Reports, 174; *State* v. *Eddinger*, 70 Missouri 545; and *State* v. *Glass*, 50 Wisconsin, 218, also reported in 36 American Reports, 476 and 845, seem to be express authority, and almost exactly like this case. *Arnold's Case*, 38 American Reports, 185, is to the same effect; 13 American Reports, 88; 20 *Id.* 688.

The evidence of the prisoner, on a former trial of the same case was, in the nature of admissions and confessions on oath, and being substantive, independent testimony, like all other declarations or admissions against interest, they were properly received on this trial; surely there could be no valid objection to its admission. It was but the statements of an accused, brought up in judgment against him, as can be done in all cases as declarations or admissions against interest. *Hamilton* v. *State*, 36 Ind. 280, or 10 American Reports, 22; *State* v. *Garrett*, 71 North Carolina, 85, or 17 American Reports, 1.

The attorney-general concluded with a discussion of the third

assignment of error, viz: the sufficiency of the evidence to warrant the verdict.

LEWIS, P., delivered the opinion of the court.

The first question to be determined relates to the admissibility as evidence of the declarations of Mayo, made recently after the shooting occurred, to the witness, Truman Richardson. The attorney-general insists, and the counsel for the prisoner deny, that the declarations so made are admissible evidence as part of the *res gestæ.*

It appears, that on the night of the 3d July, 1882, a man entered the store of Mayo for the purpose, as he avowed, of making some small purchases, and two or three minutes after entering the store, without any notice or apparent provocation whatever, shot him through the head with a pistol, the ball entering at the corner of the left eye, passing through his head, and lodging under the skin at the back of the neck. Immediately upon the firing of the pistol, Mayo put his hand to his face, felt the blood running, and exclaimed, " Oh, my ! you have killed me." He at once ran to the door, and crying "murder," walked around the house, in the dark, to the door of Truman Richardson's room, in the same house, a distance of eighty feet from the point in the store at which he was shot. He knocked at the door, which was opened by Richardson as soon as he could rise from his bed and put on his pants, and the door being opened he fell into Richardson's arms, saying, "I am shot; Wm. Kirby (meaning the prisoner) has shot me." At the time the shooting occurred, Mayo and his assailant were in the store alone, and immediately thereafter the latter fled. It does not appear that more than two minutes elapsed between the time of the shooting and Mayo's declaration to Richardson that the prisoner had shot him. At the trial Richardson was examined as a witness, and, against the objection of the prisoner,

was allowed to testify as to the declarations made to him by Mayo.

We think the testimony was properly admitted to. be weighed by the jury. In cases like the present it is essential to the admissibility of the declarations of the injured party as part of the *res gestæ* that they be made recently after the injury, and before sufficient time has elapsed for the fabrication of a story. If made after such time has elapsed, and after the *lis mota* may be supposed to exist, they are no part of the *res gestæ*, but are merely narrative of a past occurrence or hearsay, and are not admissible as evidence. Applying this test to the present case, it is plain that the prisoner's first exception is not well taken.

Here, the declarations in question were not only made recently, but probably within two minutes, after the shot was fired. And this, taken in connection with the declarant's condition, mental and physical, produced by the unexpected, unprovoked, and, as he supposed, fatal shot through the head, repels the idea that his declarations were fabricated. Indeed, under the circumstances disclosed by the record, it is hardly reasonable to suppose that they could have been fabricated, as both the time and capacity for reflection were wanting. *Hill's Case*, 2 Gratt. 594. Nor is there anything decided in *Haynes' Case*, 28 Gratt. 942, relied on by counsel for the prisoner, inconsistent with these views. That was a prosecution for larceny, and it was there held that the declarations of the prosecutor, made soon after the discovery of the larceny and after he had gone to the house of a neighbor, were not admissible. The case in its nature and circumstances so widely differs from the present case that further reference to it need not be made.

The second question relates to the admissibility of the testimony of the witness Burnley. Under the act of March 6, 1882, (Acts of Assembly 1881–'82, chapter 228, page 238,) the prisoner was a competent witness, and at a former trial of the case testi-

fied in his own behalf. At the second and last trial, and after the evidence for the defence had been introduced, Burnley was called on by the prosecution to prove that certain statements made by the defendant's witnesses—Armstrong and Bagby— were in conflict with the testimony of the prisoner as delivered on his examination as a witness at the previous trial. The court admitted the evidence, and the prisoner excepted.

The statute, Code 1873, chapter 195, section twenty-two, provides that "in a criminal prosecution other than for perjury, or an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination." The testimony was, therefore, improperly admitted. And as for this error the judgment must be reversed and a new trial awarded; the questions raised by the third and last bill of exceptions, respecting the sufficiency of the evidence to support the verdict, need not be considered.

The judgment is as follows:

This day came again as well the plaintiff in error by his counsel, as the attorney-general on behalf of the commonwealth, and the court having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said judgment affirming the judgment of the county court of Albemarle county is erroneous, in that the said county court erred in admitting the evidence of the witness, H. B. Burnley, to prove statements made by the plaintiff in error in his examination as a witness on the former trial, as set out in the second bill of exceptions. Therefore it is considered that the judgment of the circuit court be reversed and annulled; and this court now proceeding to render such judgment as the said circuit court ought to have rendered, it is further considered that the judgment of the said county court be reversed and

Judgment.

annulled, the verdict of the jury be set aside, and a new trial awarded the plaintiff in error.

Which is ordered to be certified to the said county court of Albemarle county.

JUDGMENT REVERSED.