COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


LARRY ALANZA THORNTON
                                            OPINION BY
v.   Record No. 1168-94-2          JUDGE JAMES W. BENTON, JR.
                                          MARCH 12, 1996
COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Robert L. Harris, Sr., Judge

         J. Kelly Haley for appellant.

         Kathleen B. Martin, Assistant Attorney
         General (James S. Gilmore, III, Attorney
         General, on brief), for appellee.


     On March 16th, 1994, a jury convicted Larry Alanza Thornton

of possession of heroin and distribution of heroin.  Thornton

contends that the trial judge violated Code § 19.2-270 when he

admitted evidence of incriminating testimony that Thornton

previously had given at his brother's trial on related charges.[1]

 For the reasons that follow, we affirm the convictions.

                              I.

     The evidence at trial proved that an undercover police

officer approached Thornton at a street corner known by the

_____

    [1]Code § 19.2-270 provides as follows:

            In a criminal prosecution, other than for
            perjury, or in an action on a penal statute,
            evidence shall not be given against the
            accused of any statement made by him as a
            witness upon a legal examination, in a
            criminal or civil action, unless such
            statement was made when examined as a witness
            in his own behalf.

police as a place for drug trafficking. The officer asked Thornton if he had heroin. Thornton took the officer to a store where Thornton's brother was standing. As they approached, Thornton called to his brother and asked the officer for the money. Thornton's brother joined them, reached into his pocket, and handed an envelope to Thornton. Thornton gave the envelope to the officer. The officer observed that the envelope was consistent with packaged heroin, approved the purchase, and drove away. While driving away, the officer transmitted a description of the two men to other officers. The officers arrested Thornton and his brother and charged them with possession of heroin and distribution of heroin.

Thornton received a subpoena to testify as a witness for his brother, who was the first to be tried. Against the advice of his own counsel, Thornton voluntarily testified as a witness at his brother's trial. After informing the trial judge that he understood the consequences of his actions, Thornton testified that when the officer approached him he had heroin in his pocket and sold that heroin to the officer. He also testified that he called to his brother only because he did not want to be alone with the officer. Thornton further testified that he had been selling drugs for about twenty years and that his brother did not sell drugs.

Prior to his own trial, Thornton filed a motion in limine to bar the Commonwealth from introducing into evidence at his trial

the testimony he gave at his brother's trial.  Thornton argued

that Code § 19.2-270 provided him with immunity against the use

of his prior testimony.  In response, the Commonwealth argued

that the questions of admissibility and immunity in drug

prosecutions are governed exclusively by Code § 18.2-262 and,

further, that Thornton could not in any event claim immunity

because he had testified in his own behalf.[2]  Stating that Code §

19.2-270 was not intended to allow a defendant to give self-

incriminating testimony to exonerate a co-defendant and then hide

behind the immunity statute in his own subsequent trial, the

trial judge denied the motion.  At Thornton's trial, the

Commonwealth offered as evidence the transcript of Thornton's

testimony at his brother's trial.  Thornton was convicted and

appeals the trial judge's ruling.

## II.

Initially, the Commonwealth contends that Code § 19.2-270

---

[2]In pertinent part Code § 18.2-262 states as follows:

> No person shall be excused from testifying or
> from producing books, papers, correspondence,
> memoranda or other records for the
> Commonwealth as to any offense alleged to have
> been committed by another under this article
> or under the Drug Control Act        (§ 54.1-
> 3400 et seq.) by reason of his testimony or
> other evidence tending to incriminate himself,
> but the testimony given and evidence so
> produced by such person on behalf of the
> Commonwealth when called for by the trial
> judge or court trying the case, or by the
> attorney for the Commonwealth, or when
> summoned by the Commonwealth and sworn as a
> witness by the court or the clerk and sent
> before the grand jury, shall be in no case
> used against him nor shall he be prosecuted as
> to the offense as to which he testifies.

does not apply to the case.  The Commonwealth argues that

Thornton was prosecuted for a drug offense and, therefore, Code § 18.2-262 is the exclusive provision that confers immunity. We do not agree. Neither statute precludes the operation of the other. Although the statutes offer different types of immunity, see Caldwell v. Commonwealth, 8 Va. App. 86, 88, 379 S.E.2d 368, 369 (1989)(Code § 18.2-262 offers transactional and use immunity); Gosling v. Commonwealth, 14 Va. App. 158, 164, 415 S.E.2d 870, 873 (1992)(Code § 19.2-270 offers only use immunity), neither statute precludes, in an appropriate case, a witness from claiming immunity. We hold that Code § 18.2-262 does not preclude Thornton from claiming protection under Code § 19.2-270.

### III.

The Commonwealth also argues that Code § 19.2-270 does not apply to Thornton because he testified in his own behalf at his brother's trial. In parsing the wording of Code § 19.2-270, we conclude that many of its provisions are applicable to Thornton's situation. Thornton's trial was "a criminal prosecution, other than for perjury." Id. Thornton, sought to bar "evidence . . . given against [him,] the accused [,] of any statement made by him as a witness upon legal examination, in a criminal . . . action." Id. The controlling issue in this case is whether Thornton was "examined as a witness in his own behalf" at his brother's trial. Id. If he was, his testimony could be used against him.

The predecessor to Code § 19.2-270 was chapter 195, section 22 of the Code of Virginia of 1873. It provided the following:
> In a criminal prosecution other than for

perjury, or an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination.

The Supreme Court applied that statute in Kirby v. Commonwealth, 77 Va. 681 (1883), when Kirby, who had been charged with malicious shooting with the intent to kill, was tried twice. Id. at 682. In the first of two trials, Kirby testified as a witness in his own defense. After a new trial was ordered, Kirby did not testify at the second trial. A third party was allowed to testify, however, that statements made by Kirby at the first trial conflicted with the testimony of two of his witnesses at the second trial. Id. at 690.

The Court held that although Kirby had testified in his own behalf at the first trial, his testimony was given as a witness upon a legal examination "in a criminal prosecution other than for perjury." Id. at 690 (quoting Code 1873, ch. 195, § 22). Therefore, the Court held that Kirby's testimony from the first trial was improperly admitted and reversed the judgment. Id.

"[T]o meet the effect of [Kirby]" the General Assembly amended the statute by adding the words, "'unless such statement was made when examined as a witness in his own behalf.'" Thaniel v. Commonwealth, 132 Va. 795, 802, 111 S.E. 259, 261 (1922). When the Supreme Court decided Mullins v. Commonwealth, 113 Va. 787, 75 S.E. 193 (1912), the amended statute was in effect. During Mullins' murder trial, the judge permitted a witness "to testify to a statement made by [Mullins] in his examination at

the inquest before the coroner's jury." Id. at 792, 75 S.E. at 196. Citing the amendment, the Supreme Court reversed the trial judge's ruling and held that "the evidence in question was forbidden by the [amended statute]." Id. The Court did not further explain the basis for its holding.

In Thaniel, the Supreme Court revisited the issue in a slightly different context. Thaniel, who was being tried for murder, had also previously testified at a coroner's inquest. The Court elaborated upon the circumstances relating to Thaniel's testimony at the coroner's inquest:

> On the day after the homicide the coroner held an inquest at which [Thaniel] testified as a witness. While the record is not entirely clear upon the point, we shall assume, in order to give [Thaniel] the full benefit of his contention, that he was duly summoned and that he did not voluntarily offer himself as a witness. He was not under arrest at that time, nor, so far as the record shows, had he been charged with the crime. Upon this assumption and under these circumstances, even though his testimony at the coroner's inquest may have tended to exculpate him, he cannot be regarded as having been there in the capacity of a witness in his own behalf.

Thaniel, 132 Va. at 800, 111 S.E. at 260 (citations omitted).

Unlike Mullins, where the Commonwealth used Mullins' prior testimony as evidence in its case-in-chief, in Thaniel the Commonwealth used Thaniel's prior testimony to cross-examine Thaniel. The Supreme Court found this difference significant and stated the following:

> In the Mullins Case, the former statements of the accused which the court said were

> improperly admitted had not been made as a witness in his own behalf, but at a coroner's inquest, and were testified to by a third party as a witness in chief for the Commonwealth. The case would, therefore, be in point here as authority for the accused but for the fact that <u>there is</u> (contrary to his contention) <u>a clear distinction between a case in which the Commonwealth undertakes to prove by evidence in chief statements made by an accused person upon a former legal examination (not as a witness for himself), and a case in which the Commonwealth merely seeks to bring out</u>, or to lay the foundation for bringing out, <u>such statement by cross-examination of the prisoner himself when he takes the stand in his own behalf</u>.

<u>Thaniel</u>, 132 Va. at 803, 111 S.E. at 261 (emphasis added).

Although <u>Thaniel</u> was ultimately decided upon principles not applicable to the case before us, we cite the above passages from <u>Thaniel</u> because they appear to suggest that whether a person has been "examined as a witness in his own behalf" may depend, in part, upon circumstances of the prior legal examination. <u>Thaniel</u> suggests that these circumstances would include whether the person has been charged criminally when giving the first testimony or whether the proceeding in which the prior testimony was given was one that was adversarial to the person.

The circumstances in <u>Hansel v. Commonwealth</u>, 118 Va. 803, 88 S.E. 166 (1916) are instructive in deciding Thornton's case. Hansel was charged with feloniously forging and uttering an option contract for the sale of land. <u>Id.</u> at 807, 88 S.E. at 166. A co-defendant was charged with aiding and abetting Hansel in the commission of the forgery. <u>Id.</u> at 807, 88 S.E. at 166.

- 8 -

The evidence proved that before Hansel was criminally charged, the co-defendant filed a civil action on the option contract for recovery of commissions. Hansel, who was not a party to that civil suit, testified as a witness for the co-defendant. 118 Va. at 804, 88 S.E. at 166.

In the later criminal prosecution against Hansel, the trial judge allowed the Commonwealth to prove the testimony that Hansel gave in the civil action. Although the civil action was brought in the name of the co-defendant and Hansel was not a party to the civil action, Hansel was to receive one-third of the commission resulting from the civil suit. Id. at 808, 88 S.E. at 166. In approving the use in the criminal prosecution of Hansel's testimony from the civil case, the Supreme Court held as follows:

> With respect to this objection, it is sufficient to say that though Hansel was called as a witness [in the civil case] for the . . . [co-defendant], they had a joint interest in the recovery. So that in point of fact he was "examined as a witness in his own behalf."

118 Va. at 809, 88 S.E. at 167.

In Boney v. Commonwealth, 16 Va. App. 638, 642, 432 S.E.2d 7, 9-10 (1993), we considered whether Code § 19.2-270 allowed a judge to compel testimony from a co-defendant who refused to testify at Boney's trial. Although the decision focused primarily on the effect of the co-defendant's invocation of the Fifth Amendment, we considered the scope of Code § 19.2-270. Relying on Hansel, we noted that if the co-defendant had

testified, he would have been "'examined as a witness in his own behalf' because he and Boney had a 'joint interest' in the events that were the focus of the litigation." Boney, 16 Va. App. at 641-42, 432 S.E.2d at 9 (citation omitted). We concluded that the co-defendant had a "joint interest" with Boney because the co-defendant "was in custody on charges arising out of the same incident" for which Boney was being prosecuted. Boney, 16 Va. App. at 641, 432 S.E.2d at 9.

Thornton argues that a witness could only have testified in his own behalf, as explained in Hansel, if the witness had an interest in the actual recovery to be gained from the prior proceeding. 118 Va. at 809, 88 S.E. at 167. We agree that Hansel's testimony at the civil trial had the potential to increase the chance that he would receive one-third of the commission. Thus, he testified for his own financial benefit. Nonetheless, we do not read Hansel to limit the testifying witness' interest solely to an actual recovery that might result from the proceeding. Rather, Hansel identifies a favorable recovery as a sufficient interest that the testifying witness may have.

The evidence in this case proved that Thornton and his brother were arrested and charged with identical offenses arising out of the same transaction. Although not a party to his brother's earlier criminal trial, Thornton had an interest in the outcome comparable to the joint interest discussed in Boney. The

- 10 -

Commonwealth's case against the brothers arose from the same transaction and rested on the same set of facts. The resolution of factual and legal issues in one case had the potential to affect the issues in the other case. Thus, we conclude that Thornton had a personal interest in the outcome of his brother's trial.

Moreover, Thornton also had a familial interest in the outcome of his brother's prosecution. An acquittal of his brother or a lessening of the punishment that his brother received would have been a favorable result for him and his brother. Thornton took responsibility for the crime at his brother's trial and sought to exonerate his brother. His testimony was not compelled. Indeed, he freely testified after receiving and rejecting his counsel's advice.

As a consequence, we hold that Thornton's testimony at his brother's trial constituted statements that he made "when examined as a witness in his own behalf." Code § 19.2-270. Thus, Thornton was not "entitled to any protection under the statute" when the prosecutor sought to use his testimony against him. <u>Boney</u>, 16 Va. App. at 642, 432 S.E.2d at 10. Applying the express wording of Code § 19.2-270 that withholds immunity where the witness testified "when examined as a witness in his own behalf," we hold that the trial judge properly allowed Thornton's prior testimony. Therefore, we affirm the convictions.

<u>Affirmed</u>.