Tuesday                    14th

October, 2003.


Shakeva Quarleat Frazier,                                                                    Appellant,

 against                    Record No. 2512-01-3
                           Circuit Court No. CR01-1219

Commonwealth of Virginia,                                                                    Appellee.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner, Frank,
Humphreys, Clements, Felton and Kelsey

S. Jane Chittom, Appellate Defender (Public Defender Commission,
on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
Attorney General; H. Elizabeth Shaffer, Assistant Attorney General,
on brief), for appellee.


By opinion issued April 29, 2003, a panel of this Court reversed the conviction of Shakeva

Quarleat Frazier for aiding and abetting a failure to appear in court and remanded the matter for further

proceedings.  See Frazier v. Commonwealth, 40 Va. App. 350, 579 S.E.2d 628 (2003).  Thereafter, we

stayed the mandate of that decision and granted the Commonwealth's petition for rehearing *en banc*.

Upon rehearing *en banc*, the judgment of the trial court is affirmed without opinion by an evenly

divided Court.  Accordingly, the opinion previously rendered by a panel of this Court on April 29, 2003

is withdrawn, and the mandate entered on that date is vacated.  The appellant shall pay to the

Commonwealth of Virginia thirty dollars damages.

Chief Judge Fitzpatrick, Judges Bumgardner, Frank, Felton and Kelsey voted to affirm the

judgment of the trial court.

Judges Benton, Elder, Annunziata, Humphreys and Clements voted to reverse the judgment of the trial court.

The Commonwealth shall recover of the appellant the costs in this Court, which costs shall include a total fee of $925 for services rendered by the Public Defender on this appeal, in addition to counsel's necessary direct out-of-pocket expenses, and the costs in the trial court.

This order shall be published and certified to the trial court.

Costs due the Commonwealth
  by appellant in Court of
  Appeals of Virginia:

Public Defender        $925.00    plus costs and expenses

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present: Chief Judge Fitzpatrick, Judge Elder and
          Senior Judge Coleman
Argued at Salem, Virginia


SHAKEVA QUARLEAT FRAZIER
                                                    OPINION BY
v.        Record No. 2512-01-3                JUDGE LARRY G. ELDER
                                                    APRIL 29, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

S. Jane Chittom, Appellate Defender (Public Defender Commission, on
briefs), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Shakeva Quarleat Frazier (appellant) appeals from her bench trial conviction for aiding and

abetting a failure to appear in court in violation of Code § 19.2-128(B). On appeal, she contends the

trial court's admission of her testimony from the previous trial of her boyfriend violated Code

§ 19.2-270. We hold the prior testimony was inadmissible against appellant under Code § 19.2-270

because it was not "a statement . . . made when [she was] examined as a witness in [her] own behalf."

Thus, we reverse and remand.

I.

BACKGROUND

On June 5, 2000, Ampazzio Warren was tried by a jury for three felonies, possession of cocaine

with intent to distribute, possession of a firearm while in possession of cocaine, and possession of a

concealed weapon, second offense. While the jury was deliberating in the guilt phase of the trial,

Warren left the courthouse and failed to return.

Warren was subsequently arrested in Burlington, North Carolina. On September 8, 2000, he was tried on a charge of failure to appear based on his flight from the June 5, 2000 trial. Warren entered a plea of not guilty. Appellant appeared at that proceeding and testified on Warren's behalf. Appellant, through counsel, claimed to have been subpoenaed on Warren's behalf, and the Commonwealth "assum[ed]" "for the purposes of [the subsequent proceedings against appellant]" "that she was."

Appellant testified that Warren was her boyfriend and that she was pregnant with his child both at the time of his June 5, 2000 trial and the time of the September 8, 2000 trial. Appellant testified that while the jury was deliberating, she spoke to Warren in the hall and told him the following:

> I didn't think he was havin' a fair trial given to him . . . , and I was just real upset, and . . . I spoke with him in private, and I told [him] I was scared, and 'dat I didn't want him to stay here. I wanted him to leave with me, and I told him that if he didn't[,] "I'll kill myself and our child" that I'm carryin'.

Appellant admitted that while Warren was a fugitive, he "was staying down in Burlington with [her] and [her] father." Appellant said she was "concerned about [her] boyfriend and the father of this child[] going to prison" and admitted "[she] knew it was wrong for [Warren] to leave Court." The following exchange then took place:

> [PROSECUTOR:] And you encouraged him to do it anyway, didn't you?
>
> [APPELLANT:] Yes sir, and that's what I came to Court for today . . . to accept that responsibility and whatever punishment seems fit for it . . . that I knew I'd done wrong, and I made a lot of wrong decisions. It affected [Warren], me, his aunt, my father . . . a lot of people, also.
>
> [PROSECUTOR:] Well, you . . . do you have any comprehension that you have just admitted to committing a felony?
>
> [APPELLANT:] Yes sir.

In November 2000, appellant was indicted for aiding and abetting Warren's failure to appear. On July 17, 2001, she was tried for that offense. The parties agreed on the relevant factual and procedural background. The Commonwealth's only substantive evidence of appellant's acts of aiding and abetting

was appellant's testimony from Warren's trial on the charge of failure to appear. Appellant argued that the provisions of Code § 19.2-270 rendered that prior testimony inadmissible.

The trial court framed the issue as "whether or not the defendant, Ms. Frazier, was examined as a witness in her own behalf at Mr. Warren's trial" and ruled as follows:

> [T]he transcript not only provides evidence that Ms. Frazier directly involved herself in Mr. Warren's decision to leave the courtroom, but it also provides evidence of a strong relationship. . . . [I]n [Thornton v. Commonwealth, 22 Va. App. 2, 467 S.E.2d 820 (1996)], . . . it was brothers, I think . . . . In this case, it's a situation where we have a boyfriend and girlfriend relationship, but more than that, we have a situation where the defendant, Miss Frazier, was carrying Mr. Warren's child. So I think [Thornton] does apply . . . and I think [Thornton] says that . . . circumstances such as the relationship and additional circumstances concerning whether or not the person was compelled to testify at the request of the Commonwealth, are issues [with which] the Court needs to concern itself. Here, it's no question, just as in [Thornton], that Ms. Frazier and Mr. Warren had a joint interest in the prior case. . . . [S]o in this case, . . . I think the exception in 19.2-270 applies, because I think that she felt that she had an interest in that prior case, . . . and that she was testifying, in essence, not only in Mr. Warren's behalf, but also in her own behalf.

The trial court then found appellant guilty of the charged offense, and appellant noted this appeal.

II.

ANALYSIS

Code § 19.2-270 provides as follows:

> In a criminal prosecution, other than for perjury, or in an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination, in a criminal or civil action, unless such statement was made when examined as a witness in his own behalf.

At issue in this case is the meaning of the phrase, "when examined as a witness in his own behalf."

The statute originally contained no such language, providing only that, "'In a criminal prosecution other than for perjury, or an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination.'" Thaniel v. Commonwealth, 132 Va. 795, 801-02, 111 S.E. 259, 261 (1922) (quoting Code of 1873, c. 195, § 22,

–5–

which it listed as "subsequently amended and now appearing as section 4781").  The General Assembly added the final clause of the statute to reverse the holding in Kirby v. Commonwealth, 77 Va. 681 (1883).  See Thaniel, 132 Va. at 802, 111 S.E. at 261.

Kirby involved two trials, with the accused testifying only in the first one.  Kirby, 77 Va. at 689-90.  At the second trial, Kirby offered testimony from two witnesses that was at odds with his own testimony in the first trial.  Id. at 690.  The trial court allowed the Commonwealth to introduce Kirby's testimony from the first trial to show the conflict, but the Supreme Court, based on the language of the statute, held that the admission was error.  Id.  "[That] decision was in conformity with the terms of the statute . . . then in force; and it was doubtless to meet the effect of that decision that the statute was subsequently amended by adding the words, 'unless such statement was made when examined as a witness in his own behalf.'"  Thaniel, 132 Va. at 802, 111 S.E. at 261.

The Supreme Court has subsequently held that the person testifying in the prior proceeding need not have been a party to that proceeding in order for the testimony to have been given "when [the person was] examined as a witness in his own behalf."  Hansel v. Commonwealth, 118 Va. 803, 88 S.E. 166 (1916).  In Hansel, the accused was charged with forging and uttering an option contract for the sale of land.  Id. at 807, 88 S.E. at 166.  A codefendant was charged with aiding and abetting the accused in the forgery.  Id.  Before Hansel and the codefendant were criminally charged, the codefendant filed a civil action to recover commissions due under the contract.  Thornton, 22  Va. App. at 8, 467 S.E.2d at 823. Hansel was not a party to the civil suit but testified as a witness for the codefendant and was entitled to receive one-third of the commissions sought in the civil suit.  Hansel, 118 Va. at 808, 88 S.E. at 166.

In the subsequent criminal proceeding, the trial court admitted Hansel's testimony from the civil suit.  Id. at 808-09, 88 S.E. at 167.  The Supreme Court affirmed, holding "it is sufficient to say that though Hansel was called as a witness for the [codefendant in the civil suit,] [Hansel and the codefendant] had a joint interest in the recovery.  So that in point of fact he was 'examined as a witness in his own behalf.'"  Id. at 809, 88 S.E. at 167.  Thus, Hansel established that a non-party who testified

-6-

as a witness in a prior proceeding and had a joint financial interest in that proceeding gave that prior testimony "as a witness in his own behalf" for purposes of admitting that testimony into evidence against him in a subsequent criminal proceeding.

More recently, we have recognized that the joint interest motivating the witness' testimony in the prior proceeding need not have been limited to a financial interest. Thornton, 22 Va. App. at 9-10, 467 S.E.2d at 823-24; Boney v. Commonwealth, 16 Va. App. 638, 641-42, 432 S.E.2d 7, 9 (1993) (holding that if codefendant were forced to testify, he would have been "'examined as a witness in his own behalf'" because codefendant "was in custody on charges arising out of the same incident" for which Boney was being prosecuted). Boney's interest was to avoid criminal prosecution.

In Thornton, for example, Thornton and his brother were charged with possessing and distributing heroin. 22 Va. App. at 4, 467 S.E.2d at 821. Thornton's brother was tried first, and Thornton was subpoenaed to testify. Id. Against the advice of his own attorney, Thornton informed the trial court "he understood the consequences of his actions" and testified that he alone possessed and distributed the drugs. Id.

We held Thornton's testimony in his brother's trial was admissible in his own trial. Id. at 10, 467 S.E.2d at 824. We noted that "whether a person has been 'examined as a witness in his own behalf' may depend, in part, upon circumstances of the prior legal examination," "includ[ing] whether the person has been charged criminally when giving the first testimony or whether the proceeding in which the prior testimony was given was one that was adversarial to the person." Id. at 8, 467 S.E.2d at 823 (citing Thaniel, 132 Va. at 800, 803, 111 S.E. at 260, 261, in which Court held that Thaniel's exculpatory testimony at inquest, given when he was under subpoena and had not been charged with a crime, was admissible in subsequent criminal proceeding only for impeachment purposes). We reasoned as follows:

> The evidence in this case proved that Thornton and his brother were arrested and charged with identical offenses arising out of the same transaction. Although not a party to his brother's earlier criminal trial,

–7–

Thornton had an interest in the outcome comparable to the joint interest discussed in Boney. The Commonwealth's case against the brothers arose from the same transaction and rested on the same set of facts. The resolution of factual and legal issues in one case had the potential to affect the issues in the other case. Thus, we conclude that Thornton had a personal interest in the outcome of his brother's trial.

Moreover, Thornton also had a familial interest in the outcome of his brother's prosecution. An acquittal of his brother or a lessening of the punishment that his brother received would have been a favorable result for him and his brother. Thornton took responsibility for the crime at his brother's trial and sought to exonerate his brother. His testimony was not compelled. Indeed, he freely testified after receiving and rejecting his counsel's advice.

As a consequence, we hold that Thornton's testimony at his brother's trial constituted statements that he made "when examined as a witness in his own behalf." Code § 19.2-270. Thus, Thornton was not "entitled to any protection under the statute" when the prosecutor sought to use his testimony against him. Boney, 16 Va. App. at 642, 432 S.E.2d at 10.

Id. at 10, 467 S.E.2d at 824.

Here, the trial court's ruling admitting appellant's prior testimony was based primarily on its finding of "a strong relationship" between appellant and Warren because she was pregnant with his child. We recognize the significance of such a relationship.[1] Nevertheless, the existence of such a relationship, standing alone, is insufficient to permit a finding that appellant was "examined as a witness in [her] own behalf." Had the Commonwealth, rather than Warren, called Frazier as a witness at his previous trial and had the Commonwealth elicited the same evidence which incriminated not only Warren but also herself, there can be little doubt that she would not have been testifying "as a witness in her own behalf." The fact that Warren compelled her to give this testimony rather than the Commonwealth does not render the testimony substantively favorable or on "her own behalf." Appellant, like Thornton did for his brother, took the stand and claimed some responsibility for Warren's

---

[1] The legislature has recognized this significance in other contexts. See Code § 16.1-228 (recognizing intensity of relationship that may result from such status by defining "Family or household member" to include "any individual who has a child in common with the person, whether or not the person and that individual have been married or have resided together at any time" for purposes of juvenile and domestic relations district court's jurisdiction"); Code § 18.2-57.2 (imposing heightened penalties for repeated assault and battery against a "family or household member" as defined in Code § 16.1-228).

– 8 –

failure to appear. However, in Thornton, the defendant and his brother had both actually been charged with identical offenses and the defendant was represented by counsel, with whom he had consulted before deciding to testify. In appellant's case, by contrast, only Warren had been charged when appellant took the stand. Further, although appellant said she knew her testimony admitting her actions could result in her being prosecuted, no evidence established that she had consulted with an attorney prior to testifying. Finally, appellant's compelled testimony did not tend to exculpate Warren or herself and was, at most, a mitigating factor explaining why Warren fled the jurisdiction mid-trial. Thus, the holding in Thornton is distinguishable.

Citing Hansel, the Commonwealth argues that appellant also had a significant financial interest in the outcome of Warren's trial for failure to appear. We hold that any financial interest appellant may have had also was insufficient to permit a finding that she testified "as a witness in [her] own behalf." In Hansel, the defendant's financial interest in the prior proceeding was a contractual right to one-third of any award received as a result of that prior proceeding. 118 Va. at 808, 88 S.E. at 166. Here, by contrast, any right of support appellant's unborn child might have after its birth was owed to the child rather than to appellant. See, e.g., Rodriguez v. Rodriguez, 1 Va. App. 87, 91, 334 S.E.2d 595, 597 (1985) ("Child support is not a property right of the custodial parent . . . ."). In the absence of marriage, appellant herself had no right of support from Warren under Virginia law. See Kelderhaus v. Kelderhaus, 21 Va. App. 721, 725, 467 S.E.2d 303, 305 (1996) ("Virginia does not recognize domestic common-law marriages . . . ."). Thus, any financial benefit appellant might receive if appellant avoided incarceration was a mere expectation rather than a contractual or statutory right. We hold such an expectation was insufficient to render her prior testimony admissible against her under Code § 19.2-270.

As we have recognized previously,

> Code § 19.2-270 benefits both the witness-in-jeopardy and the accused by immunizing the witness. Benefit to the witness from use of immunity is manifest. The benefit to the accused lies in taking away the obstacle to confrontation posed by the witness' continued assertion of the fifth

– 9 –

amendment privilege.  A third, and equally important, benefit accrues to
the truthfinding process.

Cunningham v. Commonwealth, 2 Va. App. 358, 363, 344 S.E.2d 389, 391 (1986).  While extending the

decisions in Thornton and Hansel to uphold the admission of appellant's prior testimony would benefit

the truth-finding process in this particular case, such an extension of Thornton and Hansel will inhibit

the ability of other defendants to obtain truthful testimony from witnesses in future cases if those

witnesses perceive that the protections of Code § 19.2-270 are illusory or have been eviscerated.  We are

unwilling to further extend the exceptions to Code § 19.2-270 to include any witness who knows the

defendant and gives testimony at the defendant's trial.  Thus, we hold that when appellant testified at

Warren's trial for failing to appear and admitted that Warren fled the jurisdiction in the middle of his

earlier trial for drug and firearms charges, albeit upon appellant's encouragement and threats of harm to

herself and her unborn child, appellant did not give that testimony "as a witness in [her] own behalf."

For these reasons, we reverse appellant's conviction and remand for further proceedings if the

Commonwealth be so advised.

Reversed and remanded.

Fitzpatrick, C.J., dissenting.

Based on the reasoning in Hansel v. Commonwealth, 118 Va. 803, 88 S.E. 166 (1916), and Thornton v. Commonwealth, 22 Va. App. 2, 467 S.E.2d 820 (1996), I would affirm the trial court's ruling. Therefore, I respectfully dissent.

The trial court ruled that, at Ampazzio Warren's trial for failing to appear, appellant "was testifying, in essence, not only in Mr. Warren's behalf, but also in her own behalf." Appellant's testimony established that Warren was her boyfriend and that, at both the time she encouraged him to flee the jurisdiction and at the time she testified at his resulting trial for failing to appear, she was pregnant with his child. Cf. Code § 16.1-228 (recognizing intensity of relationship that may result from such status by defining "Family or household member" to include "any individual who has a child in common with the person, whether or not the person and that individual have been married or have resided together at any time" for purposes of juvenile and domestic relations district court's jurisdiction"); Code § 18.2-57.2 (imposing heightened penalties for repeated assault and battery against a "family or household member" as defined in Code § 16.1-228); Bennett v. Dep't of Soc. Servs., 22 Va. App. 684, 691-92, 472 S.E.2d 668, 672 (1996) (discussing duty of parents to provide support for minor child). Appellant admitted she encouraged Warren to flee his trial for drug and weapons offenses on June 5, 2000, because she did not want "[her] boyfriend and the father of this child[] going to prison." A reasonable inference is that her feelings were the same when she testified at Warren's trial of September 8, 2000, for failing to appear and that she hoped to help him avoid incarceration for that offense or at least to lessen his punishment. Thus, although the facts are not identical, the evidence supports the trial court's conclusion that appellant had the type of personal, financial and familial interests set out in Hansel and Thornton and, thus, that her testimony from Warren's trial for failing to appear was admissible in her subsequent trial for aiding and abetting that offense.

Although no charges were pending against appellant when she testified in Warren's trial for failing to appear and no evidence established that appellant obtained legal advice before giving

-11-

self-incriminating testimony at Warren's trial, nothing in the case law holds that such advice is a prerequisite to the admissibility of such testimony in a subsequent proceeding. See Thornton, 22 Va. App. at 8, 467 S.E.2d at 823 (noting that resolution of admissibility issue "may depend, in part, upon circumstances of the prior legal examination"); id. (noting that, in Hansel, prior testimony in civil suit was given before filing of criminal charges against Hansel). We merely recognized, in reciting the facts in Thornton, that the accused had received such advice. Id. at 4, 467 S.E.2d at 821.

Further, appellant clearly contemplated that the institution of a criminal prosecution against her was likely to result from her testimony in Warren's trial for failing to appear. She expressly testified that the reason she "came to Court" for that proceeding was "to accept . . . responsibility" for encouraging Warren to flee "and whatever punishment seems fit for it." When asked by the prosecutor, "[D]o you have any comprehension that you have just admitted to committing a felony?" appellant responded, "Yes sir." Thus, despite the fact that appellant had not yet been charged with aiding and abetting Warren's flight, she expressly recognized the possibility that charges for aiding and abetting might be forthcoming.

Although Code § 19.2-270 is designed to "benefit[] both the witness-in-jeopardy and the accused by immunizing the witness," we have recognized that "[a] third, and equally important benefit, accrues to the truthfinding process." Cunningham v. Commonwealth, 2 Va. App. 358, 363, 344 S.E.2d 389, 391 (1986). As the legislature acknowledged in amending the statute after Kirby v. Commonwealth, 77 Va. 681 (1883), and as this Court and the Supreme Court have acknowledged in interpreting the amended language, applying the statute to immunize (a) a defendant on retrial or (b) a witness with strong ties to a defendant, on whose behalf he has testified, so that both the witness and the defendant may avoid liability for a particular crime, would subvert rather than protect the truth-finding process.

Because I believe the evidence supports a finding that appellant testified "as a witness in [her] own behalf" at Warren's trial for failing to appear, I would hold the trial court's admission of that

testimony in appellant's subsequent trial for aiding and abetting Warren's offense was not error. Thus, I would affirm appellant's conviction and respectfully dissent.