Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Carrico, S.J.

SHAKEVA QUARLEAT FRAZIER

OPINION BY
SENIOR JUSTICE HARRY L. CARRICO
v.  Record No. 032615
September 17, 2004

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Background

In a bench trial, Shakeva Quarleat Frazier was convicted under an indictment charging her with feloniously aiding and abetting Ampazzio Walleti Warren in his failure to appear in court on a felony offense in violation of Code § 19.2-128(B).[*] Frazier, who was Warren's girlfriend, was sentenced to a term of two years in the penitentiary, with the two years suspended on condition that she serve six months in jail.

A divided panel of the Court of Appeals reversed Frazier's conviction by published opinion. Frazier v. Commonwealth, 40 Va. App. 350, 579 S.E.2d 628 (2003). Upon an en banc rehearing, the conviction was affirmed in a published order, by an equally divided court. Frazier v. Commonwealth, 41 Va. App. 595, 595, 587 S.E.2d 362, 362 (2003). We awarded Frazier this appeal. Finding that Frazier's conviction was without error, we will affirm the judgment of the Court of Appeals.

---

[*] Code § 19.2-128(B) provides in pertinent part that "[a]ny person . . . charged with a felony offense . . . who willfully fails to appear before any court as required shall be guilty of a Class 6 felony."

The record shows that on June 5, 2000, Warren was on trial before a jury in the Circuit Court of the City of Danville on three felony indictments charging possession of cocaine with intent to distribute, possession of a firearm while possessing cocaine, and possession of a concealed weapon, second offense. Warren left the courthouse when the jury retired to deliberate, and, when the jury returned, he "failed to appear." Two police officers "searched the courtroom, outside area . . . everywhere, and couldn't find him."

Warren was later arrested in Burlington, North Carolina, where he was "staying . . . with [Frazier] and [her] father." He was returned to Virginia and, on September 8, 2000, was tried in the Circuit Court of the City of Danville on a charge of failing to appear, based upon his flight from his June 5, 2000 trial. In response to a subpoena obtained by Warren's counsel, Frazier appeared as a witness in his behalf.

Frazier testified that she was pregnant with Warren's child at the time of his drug/weapons trial on June 5, 2000, and his failure-to-appear trial on September 8, 2000. At some point in the drug/weapons trial, Frazier overheard three jurors "speakin' about [Warren's] case." Then, while the jury was deliberating, Frazier talked to Warren in "the hall." She was "real upset" and "concerned about [her] boyfriend and the father of [her] child . . . going to prison." She told Warren that she "didn't

2

think he was havin' a fair trial," that she "wanted him to leave with [her]," and that "if he didn't '[she would] kill [herself] and [the] child' [she was] carryin'."

While on the witness stand, Frazier stated that she "knew it was wrong for [Warren] to leave Court" and that she "encouraged him to do it anyway." She said she had come to Warren's trial ready to accept responsibility for what she had done and "whatever punishment seems fit for it."

Prior to her own trial, Frazier moved to exclude the testimony she had given at Warren's trial on the ground such admission would violate Code § 19.2-270. That section provides in pertinent part as follows:

> In a criminal prosecution, other than for perjury, . . . evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination, in a criminal or civil action, unless such statement was made when examined as a witness in his own behalf.

The trial court denied Frazier's motion to exclude, finding that, at Warren's trial, Frazier "was testifying, in essence, not only in Mr. Warren's behalf, but also in her own behalf." Based upon that testimony, the trial court convicted Frazier of aiding and abetting Warren's failure to appear in court as required.

## Discussion

On appeal, the sole question for decision is whether the trial court's admission into evidence of Frazier's earlier testimony violated Code § 19.2-270.  Frazier emphasizes that, under the statute, the prior testimony of an accused is inadmissible against her unless it was given when testifying as a witness in her own behalf.  Frazier maintains that when she was a witness at Warren's trial for his failure to appear, she testified in his behalf, not in her own behalf.  Hence, Frazier concludes, her earlier testimony was inadmissible at her trial for aiding and abetting.

Frazier acknowledges that in Hansel v. Commonwealth, 118 Va. 803, 88 S.E. 166 (1916), this Court recognized an exception to the statutory bar provided by Code § 19.2-270.  There, Hansel allegedly forged an option contract for the sale of land under which the sellers agreed to pay Robinett, a broker, a commission of ten percent for selling the land.  Robinett assigned one-third of the commission to Hansel.  In an action later brought in Robinett's name against the sellers to collect the commission, Hansel testified as a witness in behalf of Robinett. Then, in Hansel's trial for forgery and uttering a forged instrument, the trial court admitted into evidence a stenographic report of the testimony Hansel had given in the action for commissions.  Hansel objected to the admission on the ground it was "contrary to section 3901 of the Code."  Id. at

4

809, 88 S.E. at 167.  In identical language, section 3901 is now Code § 19.2-270.  This Court held in Hansel:

>     With respect to this objection, it is sufficient to say that though Hansel was called as a witness for the plaintiff, Robinett, they had a joint interest in the recovery.  So that in point of fact he was "examined as a witness in his own behalf."

Id.

Frazier argues that the exception noted in Hansel is applicable only when the accused has a joint financial interest with the party for whom she has testified at the earlier trial. No such interest existed between her and Warren, Frazier insists.  She says that "being pregnant is not a condition that creates a legally recognized interest on the part of the expectant mother"; that "Virginia does not recognize [a] common law marriage contracted within Virginia, . . . thus the relationship between Frazier and Warren would not create any legally recognized duty of Warren toward Frazier"; and that the "right of child support belongs to the child, not to its mother."

While the facts in Hansel differ somewhat from the factual situation here, we disagree with Frazier's argument that the exception to Code § 19.2-270 noted in Hansel may be applied only when there is present the precise type of financial interest that was involved in that earlier decision.  The two cases do not differ in principle, and nothing said in the Hansel opinion

5

limits application of the exception as Frazier would have it limited.

We are of opinion that the exception should also be applied when, as here, there exists between the parties interests of a personal, familial, and financial nature and the issue is whether the accused was testifying in her own behalf at an earlier trial.  There can be no doubt that a personal and familial interest existed between Frazier and Warren.  They were girlfriend and boyfriend and she was carrying his child, both when she urged him to flee from his drug/weapons trial and when she testified at his trial for failure to appear.

The General Assembly has addressed the personal and familial nature of this sort of relationship.  In Code § 16.1-228, the term  " '[f]amily or household member,' " when used in the chapter relating to juvenile and domestic relations district courts, includes "(v) any individual who has a child in common with [another] person, whether or not the person and that individual have been married or have resided together at any time."  See also Code §§ 18.2-57.2(D) and 18.2-60.3(F) (in prosecutions for domestic assault and battery and for stalking, the term "family or household member" shall have the same meaning as provided in Code § 16.1-228).

Neither can there be any doubt that a financial interest existed between Frazier and Warren.  The General Assembly has

6

addressed the financial aspect of the situation in which these parties found themselves.  Code § 20-61 provides that "<u>any parent</u> who deserts or willfully neglects or refuses or fails to provide for the support and maintenance of his or her child under the age of eighteen years of age . . . shall be guilty of a misdemeanor."  (Emphasis added.)

We are further of opinion that the personal, familial, and financial relationship existing between Frazier and Warren is sufficient to serve as a predicate for finding that an earlier statement was made in her own behalf as well as in behalf of another member of that relationship.  As noted <u>supra</u>, the trial court found that when Frazier testified at Warren's failure-to-appear trial, she "was testifying, in essence, not only in Mr. Warren's behalf, but also in her own behalf."  The evidence supports the trial court's finding.

Regarding the personal and familial aspect of the Frazier-Warren relationship, Frazier testified at her own trial that she encouraged Warren to flee during his drug/weapons trial because she was concerned about her boyfriend and the father of her child going to prison.  It is reasonable to infer that she had the same concern when she testified at Warren's failure-to-appear trial and that her purpose was the same – to keep her boyfriend out of prison not only for his sake but also for the

7

benefit of herself and her child.  Frazier just took an unlawful course in the way she addressed her concern.

On the financial side of the picture, Frazier had cause to be concerned about the support of her child.  While she may be correct in saying that the relationship between her and Warren would "not create any legally recognized duty of Warren toward Frazier," Warren certainly would owe the child the duty of support, and Frazier had the right to expect Warren would perform that duty if not incarcerated.  On the other hand, were Warren incarcerated, the burden of support would fall upon her.  But, again, Frazier chose an illegal method of addressing her concern.

Although Frazier says her testimony at Warren's failure-to-appear trial was in his behalf alone, her concerns were of such importance to her that she threatened to kill herself and the child she was carrying if Warren did not flee with her.  Under the circumstances of this case, it would be unrealistic to say that Frazier was not testifying in her own behalf as well as Warren's when she served as a witness at his trial for failing to appear.

But, Frazier argues, she should not be considered as having testified in her own behalf at Warren's trial because she was compelled to testify in response to the subpoena obtained by Warren's counsel.  However, whether she appeared voluntarily or

in response to a subpoena is irrelevant to the question whether she testified in her own behalf.  Moreover, in her testimony, she disavowed any notion of compulsion when she stated that "what [she] came to Court for today [was] to accept . . . responsibility" for encouraging Warren "to leave Court."

Frazier also argues that, at the time she testified at Warren's trial, there were no charges pending against her and she had not been advised of the possible consequences of giving self-incriminating testimony.  However, she does not cite nor are we aware of any authority requiring that she should have been given such advice as a prerequisite to the admissibility of her prior testimony.  Furthermore, while on the witness stand, she admitted that she knew "it was wrong for [Warren] to leave Court," yet she "encouraged him to do it anyway."

For the reasons assigned, we will affirm the judgment of the Court of Appeals.

Affirmed.